145 P.3d 1224 (2006)
STATE of Washington, Respondent,
v.
Anthony Lamar KING, Appellant.
Nos. 23947-1-III, 24887-9-III.
Court of Appeals of Washington, Division 3.
October 24, 2006.
*1225 William D. Edelblute, Attorney at Law, Spokane, WA, for Appellant.
Andrew J. Metts, III, Spokane County Pros. Off., Spokane, WA, for Respondent.

OPINION PUBLISHED IN PART
SWEENEY, C.J.
¶ 1 Washington's witness intimidation statute outlaws threats of bodily harm or death to former witnesses because of their role in official proceedings. This does not violate constitutionally protected free speech because it prohibits no speech other than "true threats." RCW 9A.72.110(3)(a)(ii), incorporating former RCW 9A.04.110(25) (1988).[1] Therefore, conviction does not require proof beyond the elements of the statute, and the trial judge need not instruct the jury on the definition of "true threat." We therefore affirm Mr. King's conviction for intimidating a witness and remand for resentencing.

FACTS
¶ 2 Deputy Sheriff Michael R. McNees arrested Anthony L. King in 2003 for several felonies. Mr. King became angry on the way to jail and said to Deputy McNees, "I bet your name and address are in the phone book." 2 Report of Proceedings (RP) at 10. This caused Deputy McNees concern that Mr. King meant to harm him in the future.
¶ 3 The State charged Mr. King with a number of crimes the exact nature of which is not pertinent to this appeal. Deputy McNees testified at Mr. King's trial. From the witness stand, Deputy McNees could see Mr. King mouthing the word, "liar." Id. at 12, 50. Mr. King became angry after the judge pronounced him guilty on all counts. He blurted out, "[t]his is bullshit," and slammed books down on the table. Id. at 15, 53, 67. As he was being led from the courtroom, Mr. King said to Deputy McNees that he hoped he slept well at night. Deputy McNees assured him he slept fine. The testimony as to Mr. King's precise next words varies slightly. But Mr. King agrees he said something like, "I hope you feel good, *1226 Batman." Id. at 19. (Mr. King called Deputy McNees Batman.) "I'll see you but you won't see me." Id. at 19. His tone was "sarcastic and threatening." Id. at 17. Deputy McNees remembered Mr. King's earlier remark about the phone book. He interpreted the courtroom statement as a serious threat that Mr. King would come after him and that he would not see it coming.
¶ 4 The State charged Mr. King with threatening a former witness in violation of RCW 9A.72.110(2). Several eyewitnesses testified for the State. The defense asked the court to instruct the State's witnesses not to testify that they had perceived Mr. King's words as threatening, because this was an ultimate issue for the jury. Counsel argued that only Deputy McNees's perception was relevant. The court granted the motion.
¶ 5 The State presented the testimony of a corrections officer who had been present in the courtroom during the exchange between Mr. King and Deputy McNees and had written a report about the incident. Defense counsel elicited from this witness that defendants often make angry comments that are innocuous. On redirect, the prosecutor asked the corrections officer why, then, he wrote up this particular incident. He replied it was because he felt there was a threat involved. The court instructed the jury to disregard this answer but denied Mr. King's motion for a mistrial.
¶ 6 The jury found Mr. King guilty. Mr. King challenges the sufficiency of the State's evidence that he is guilty of threatening a former witness. We have consolidated Mr. King's direct appeal and his personal restraint petition challenging his sentence. See RAP 3.3(b).

DISCUSSION
COMMUNICATION OF A TRUE THREAT
¶ 7 An essential element of intimidating a witness is a threat to a former witness because of the witness's role in an official proceeding. RCW 9A.72.110(2). A "threat" includes communicating the intent to cause bodily injury in the future. RCW 9A.72.110(3)(a)(ii), incorporating former RCW 9A.04.110(25). Mr. King contends that the State failed to show that his statements to Deputy McNees amounted to a true threat. He also contends that the court failed to give an appropriate instruction on what constitutes a true threat.
¶ 8 He relies on decisions in prosecutions for felony harassment (RCW 9A.46.020), see, e.g., State v. Kilburn, 151 Wash.2d 36, 41, 84 P.3d 1215 (2004), and therein lies the problem. He notes, correctly, that the felony harassment statute covers both protected and unprotected speech under a broad range of circumstances. He contends this means the State must prove a "true threat" to convict him for witness intimidation.
¶ 9 Evidence is sufficient to support a jury verdict if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004). We defer to the trier of fact to resolve conflicts in testimony, weigh evidence, and draw reasonable inferences therefrom. Id. An insufficiency of the evidence claim "admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). Such inferences "must be drawn in favor of the State and interpreted most strongly against the defendant." Id. (citing State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977)).
¶ 10 The construction of a statute, however, is a question of law. And our review is, therefore, de novo. State v. Roggenkamp, 153 Wash.2d 614, 621, 106 P.3d 196 (2005). Here, Mr. King challenges the legal sufficiency of the evidence. And he assigns error to the court's failure to require the jury to find "true threats."
¶ 11 A criminal statute that prohibits a substantial amount of constitutionally protected free speech violates the First Amendment and is facially overbroad. City of Seattle v. Abercrombie, 85 Wash.App. 393, 397, 945 P.2d 1132 (1997); Thornhill v. Alabama, 310 U.S. 88, 97, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). Innocent blather and jokes about *1227 harming people are protected speech. Kilburn, 151 Wash.2d at 41, 84 P.3d 1215. But true threats are not. Id.
¶ 12 A statute that criminalizes speech must distinguish, then, between true threats and protected speech such as jokes and mere puffery. Id. A "true threat" is a statement made in a context in which a reasonable person would foresee that the statement would be interpreted by a person to whom it is directed as a serious expression of an intent to inflict bodily harm or death. State v. Stephenson, 89 Wash.App. 794, 801, 950 P.2d 38 (1998) (quoting United States v. Khorrami, 895 F.2d 1186, 1192 (7th Cir.1990) (quoting United States v. Hoffman, 806 F.2d 703, 707 (7th Cir.1986))).
¶ 13 Thus, it is the context that makes a threat "true" or serious. The test is an objective one, based on the speaker. Stephenson, 89 Wash.App. at 801, 950 P.2d 38. A "true" threat exists if the speaker would reasonably foresee under the circumstances that the listener would believe he or she will be subject to physical violence. Id.; United States v. Orozco-Santillan, 903 F.2d 1262, 1265-66 (9th Cir.1990), overruled in part on other grounds by United States v. Hanna, 293 F.3d 1080 (9th Cir.2002).[2]
¶ 14 But the crime of felony harassment and the crime of witness intimidation are different. The statute prohibiting harassment covers a virtually limitless range of utterances and contexts, any of which might be protected. Both the speech and context of witness intimidation, by contrast, are limited by the language of the statute. The statute requires the State to prove that the defendant communicated an intent to harm a person who has appeared, presumably against him, in a legal proceeding. A statute is overbroad only if it prohibits constitutionally protected conduct to a substantial degree. City of Seattle v. Huff, 111 Wash.2d 923, 926, 767 P.2d 572 (1989). There is, then, no constitutionally protected speech prohibited by a statute that outlaws solely threats to witnesses.
¶ 15 The defendant in the felony harassment prosecution in Kilburn was a high school student who smiled and said he was going to bring a gun to school the next day and shoot everybody, starting with the girl he was talking to. The girl did not feel scared. The boy did not seem mean or scary. And she knew of no reason why he might wish to harm her. Only later did it occur to her that he might be serious. Kilburn, 151 Wash.2d at 39, 84 P.3d 1215. The trial court found Mr. Kilburn guilty of felony harassment. Id. at 40, 84 P.3d 1215. The Supreme Court reversed, holding that the statute was overbroad under the First Amendment, unless it was construed to require an inquiry into whether the words were a "true threat." Id. at 54, 84 P.3d 1215.
¶ 16 In some contexts, however, any "`apparently serious threat may cause the mischief or evil toward which the statute was in part directed.'" State v. Kepiro, 61 Wash. App. 116, 123, 810 P.2d 19 (1991) (quoting Roy v. United States, 416 F.2d 874, 877 (9th Cir.1969)). Laws prohibiting threats of violence focus on fear and "`the disruption that fear engenders,'" as well as the possibility that the threatened violence will occur. State v. J.M., 144 Wash.2d 472, 478, 28 P.3d 720 (2001) (quoting R.A.V. v. City of St. Paul, 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)).
¶ 17 Here, the evidence supports that Mr. King was convicted of multiple felonies with the help of Deputy McNees's testimony. And what he angrily communicated to Deputy McNees immediately after the court found him guilty was an intent to inflict bodily harm on the deputy or someone close to the deputy. Unlike felony harassment, proof of the minimum facts required to show witness intimidation, then, establishes a context that is inherently threatening. And, moreover, Mr. King had directed sinister remarks at Deputy McNees before. Unlike the girl in Kilburn, and felony harassment generally, a former adverse witness always knows a reason why the defendant might wish him harm.
*1228 ¶ 18 Mr. King also argues that words are not threatening unless the precise manner of accomplishing the threatened harm is specified. That is not correct. Even vague hints of future harm are intrinsically frightening. Arguably, a veiled threat is scarier than a specific one.
INSTRUCTIONS
¶ 19 Mr. King contends that the jury was not properly instructed on the requirements of a true threat. He bases this on his assumption that the State had to show a "true threat."
¶ 20 We review the legal sufficiency of the jury instructions de novo. State v. Barnes, 153 Wash.2d 378, 382, 103 P.3d 1219 (2005). A constitutional defect in an instruction can be raised for the first time on appeal. RAP 2.5(a)(3); State v. Sandoval, 123 Wash.App. 1, 4, 94 P.3d 323 (2004).
¶ 21 The court instructed the jury that "[a] person commits the crime of intimidating a witness when he or she directs a threat to a former witness because of the witness's role in any official proceeding." Clerk's Papers (CP) at 32. The court's elements instruction tells the jury it must find that the defendant directed a threat to a former witness because of the witness's role in an official proceeding. The court correctly defined "threat" as "to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person." Id. at 36, 94 P.3d 323.
¶ 22 We conclude that the evidence established the essential elements of witness intimidation. Moreover, the narrow scope of the speech prohibited here eliminates the First Amendment concerns inherent in the broader harassment statute. The jury was properly instructed.
MISTRIAL
¶ 23 The court granted Mr. King's pretrial motion to exclude any lay opinion that Mr. King's comment sounded threatening.
¶ 24 During the trial, a corrections officer testified that he had witnessed the exchange between Mr. King and Deputy McNees. He had written up a report of the incident. On cross-examination, defense counsel elicited testimony from this witness that defendants often make confrontational statements after a guilty verdict but that these usually were innocuous. On redirect, the prosecutor followed this up by asking why, then, the corrections officer prepared a written report in this case. The officer responded, "Because I felt there was a threat involved." 2 RP at 84.
¶ 25 The defense moved for a mistrial for violating the pretrial ruling. The prosecutor explained that the witness's answer had surprised him. He had expected the officer to say his sergeant told him to make a report. The defense reserved the objection and both counsel asked the court to instruct the jury to disregard the answer. The court did so.
¶ 26 Defense counsel again asked for a mistrial, after the jury was excused. The judge denied the motion. Mr. King assigns error to that ruling. The State responds that the testimony was admissible because a lay witness's subjective impressions of the import of statements heard by the witness are admissible under ER 701.
¶ 27 We review the trial court's evidentiary rulings for abuse of discretion. State v. McPherson, 111 Wash.App. 747, 761, 46 P.3d 284 (2002); State v. Stenson, 132 Wash.2d 668, 701, 940 P.2d 1239 (1997). When ruling on the admissibility of opinion evidence, the court does not abuse its discretion "if the ruling is fairly debatable." McPherson, 111 Wash.App. at 761, 46 P.3d 284 (citing cases).
¶ 28 The testimony of eyewitnesses based upon their own personal observations is admissible under ER 701. A lay witness can testify to opinions or inferences that are "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge." ER 701. That is what we have here. The disputed evidence is the witness's inference, rationally based on his own perception of the incident. It is admissible, then, under ER 701(a).
*1229 ¶ 29 The evidence was also relevant. The jury was asked to determine whether an utterance communicated a threat. How it sounded to disinterested bystanders is, then, relevant. The lay witness in Kilburn, for example, testified that she thought the defendant was joking. Kilburn, 151 Wash.2d 36, 84 P.3d 1215.
¶ 30 If an opinion or inference is otherwise admissible, it "is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." ER 704.
¶ 31 A witness may not, of course, express an opinion about guilt, either directly or by inference. State v. Cruz, 77 Wash.App. 811, 814, 894 P.2d 573 (1995). But whether testimony is an impermissible opinion about guilt depends upon the circumstances. Id. at 814-15, 894 P.2d 573; City of Seattle v. Heatley, 70 Wash.App. 573, 579, 854 P.2d 658 (1993). The decision to admit opinion testimony is within the discretion of the trial court. Heatley, 70 Wash.App. at 579, 585, 854 P.2d 658. The point is to avoid having witnesses tell the jury what result to reach. Cruz, 77 Wash.App. at 815, 894 P.2d 573.
¶ 32 Here, this witness simply explained that he wrote a report because of his own perception-based inference. The court would not have abused its discretion by admitting this perception-based inference of a witness about the exchange between Mr. King and Deputy McNees. As it was, the court allowed the witnesses to testify as to Mr. King's demeanor and apparent emotional state and the tone and tenor of his remarks. There was, then, no error.
PERSONAL RESTRAINT PETITION
¶ 33 Mr. King was originally convicted on three felony counts. On July 27, 2004, he was sentenced for these with an offender score of 8. He appealed.
¶ 34 His threat to Deputy McNees came after these convictions. On March 2, 2005, while his original appeal was pending, he was convicted for intimidating a witness. The three July 2004 felonies were included in his offender score. He was sentenced based on an offender score of 9+.
¶ 35 On July 29, 2005, we reversed two of the three original felony convictions, and remanded for resentencing on the remaining count. Resentencing on remand was on September 7, 2005. The reversals removed points from Mr. King's offender score. But meanwhile, a point had been added for the intimidation conviction. Mr. King was, therefore, resentenced on a score of 8.
¶ 36 Mr. King asked the trial court to review his offender score for the remanded original felony. The court transferred his CrR 7.8 request for relief from judgment to this court as a personal restraint petition, pursuant to CrR 7.8(c)(2).[3] We consolidated Mr. King's personal restraint petition with his direct appeal.
Offender Score  Witness Intimidation Sentencing
¶ 37 Mr. King notes that the witness intimidation sentence he is appealing here was imposed before the two original prior convictions were reversed. Those reversals, he contends, reduced the number of prior offenses in his offender score. The score should, therefore, be recalculated to reflect the reversals. The State agrees. And so we will remand for resentencing.
Intimidation Sentence to Run Concurrently with Prior Felony Sentence
¶ 38 "[W]henever a person is sentenced for a felony that was committed while the person was not under sentence for conviction of a felony, the sentence shall run concurrently with any felony sentence which has been imposed . . . subsequent to the commission of the crime being sentenced unless the court pronouncing the current sentence expressly orders that they be served consecutively." RCW 9.94A.589(3) (emphasis added).
¶ 39 "[W]henever a person while under sentence for conviction of a felony commits another felony and is sentenced to another term of confinement, the latter term shall not *1230 begin until expiration of all prior terms." RCW 9.94A.589(2)(a) (emphasis added).
¶ 40 Mr. King contends he committed the crime of witness intimidation before he was sentenced for the earlier three felonies. He was, accordingly, not "under sentence" for conviction of a felony. Therefore, RCW 9.94A.589(3) applies, and the witness intimidation sentence must run concurrently with the felony (not consecutively, as per RCW 9.94A.589(2)(a)).
¶ 41 The date of the earlier felony convictions was July 27, 2004. The witness intimidation offense also occurred on July 27, 2004. Mr. King was sentenced for the earlier felonies on March 11, 2005.
¶ 42 These facts trigger application of RCW 9.94A.589(3). That requires the witness intimidation sentence to be served concurrently, unless the judge orders otherwise. Here, the sentencing judge did order otherwise. As authority for doing so, however, the court cited RCW 9.94A.589(2)(a). In the margin of the judgment and sentence, next to the part that orders a consecutive sentence, is written in the margin: "Pursuant to RCW 9.94A.589(2)(a)."
¶ 43 But RCW 9.94A.589(2)(a) does not apply. It applies to those who commit a felony while under sentence for another felony. Mr. King was not under sentence when he committed the witness intimidation offense.
¶ 44 The problem here is that the sentencing judge has absolute discretion to impose consecutive sentences. State v. Linderman, 54 Wash.App. 137, 139, 772 P.2d 1025 (1989). But the presumption is that the sentences will be served concurrently. In re Pers. Restraint of Long, 117 Wash.2d 292, 303, 815 P.2d 257 (1991).
¶ 45 The court may well have imposed the witness intimidation sentence to run consecutively anyway. But Mr. King was entitled to have the court at least consider imposing concurrent sentences. And we must then remand to permit the court to exercise that discretion.
¶ 46 We affirm the conviction. We grant the personal restraint petition to the extent that we remand for resentencing.
¶ 47 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.
WE CONCUR: SCHULTHEIS and KULIK, JJ.
NOTES
[1] RCW 9A.04.110(25) was renumbered (26) by LAWS OF 2005, ch. 458, § 3.
[2] Hanna affirms Orozco-Santillan on this point and holds that the reasonable speaker test conforms with the First Amendment. Hanna, 293 F.3d at 1084. Hanna distinguishes Orozco-Santillan on an unrelated point at page 1088 n. 5.
[3] The superior court may treat a motion to vacate a criminal judgment as a personal restraint petition and transfer it directly to this court. CrR 7.8(c)(2).