FILED
COURT OF APPEALS
DIVISION II

2013 JUN -4 AM 8: 55

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42496-7-II |
| Respondent, | |
| v. | |
| STEPHEN BLAIR CLARK, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, C.J. — Stephen Blair Clark appeals his conviction of intimidating a witness, contending that the trial court erred in not giving his proposed definitional instruction of a "true threat."[1] Because the trial court's instructions properly precluded the jury from convicting Clark based on constitutionally protected speech, we affirm.

## FACTS

On January 5, 2011, around 10:30 in the evening, Jeffrey Rimack looked out his window when he heard a high-revving car speed past his home. He watched as the white Saturn went straight through a "T" intersection, crashed through a cyclone fence, drove across the neighbor's front yard, and smashed into the home's front door. While rushing to the scene, Rimack observed the passenger, later identified as Clark, get out of the passenger door, followed by the driver, and saw the driver run off, stumble in a ditch, and disappear. Clark stumbled over to

---

[1] Clark's notice of appeal shows that he also appeals his related bail jumping conviction, but he has no assignments of error or arguments challenging this conviction and, thus, we do not address it in this opinion.

Rimack and several neighbors that had gathered at the scene and asked them to help him pull the car away from the house.

When Clark noticed Veronica Reczek on the phone, he asked her if she was on the phone with the police. When she responded that she was, Clark leaned toward her and said, "Don't you know that snitches get stitches, bitch?" Report of Proceedings at 43. This remark startled her because she was concerned that Clark could be hurt and she was trying to help him. Both Rimack and Reczek noticed that Clark smelled strongly of alcohol and appeared highly intoxicated.

The State charged Clark by amended information with intimidating a witness and, after he missed a required court appearance, with bail jumping. Clark testified at his jury trial that he was the passenger, was highly intoxicated, had fallen asleep in the car, and had awoken when his head smashed into the dashboard during the crash. He testified that he did not remember making the snitches comment but that he did not doubt that he made it. He explained that he was concerned the police would think he was the driver and did not intend to threaten anyone; he just wanted to get away.

Clark proposed the following definitional instruction:

> As used in these instructions, threat means to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time. Threat also means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person.
>
> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk.

No. 42496-7-II

Clerk's Papers (CP) at 44. The trial court, citing *State v. King*, 135 Wn. App. 662, 145 P.3d 1224 (2006), declined to instruct the jury on the second paragraph of this proposed instruction, instructing it only on the first as the State had proposed.

The trial court's jury instructions also defined the offense: "A person commits the crime of intimidating a witness when he or she by use of a threat against a current or prospective witness attempts to induce that person not to report the information relevant to a criminal investigation." CP at 56 (Jury Instruction 7). And, in instruction 8, set out the elements of the offense:

> To convict the defendant of the crime of intimidating a witness as charged in Count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That on or about January 5th, 2011, the defendant by use of a threat against a current or prospective witness attempted to induce that person not to report the information relevant to a criminal investigation; and
> (2) That the acts occurred in the State of Washington.

CP at 57.

The jury found Clark guilty on both counts. Clark appeals.

ANALYSIS

Clark asks us to reverse his intimidating a witness conviction because the trial court should have given his proposed "true threat" definitional instruction. He argues that because

3

RCW 9A.72.110[2] criminalizes speech, the trial court's refusal to give his proposed instruction permitted the jury to convict him based on constitutionally protected speech.

We review de novo a claimed instructional error based on a legal ruling or a constitutional question. *State v. Schaler*, 169 Wn.2d 274, 282, 236 P.3d 858 (2010). We independently review the record in First Amendment cases to ensure that the legal ruling does not intrude on free expression. *Schaler*, 169 Wn.2d at 282 (quoting *State v. Kilburn*, 151 Wn.2d 36, 49-50, 84 P.3d 1215 (2004)). The First Amendment does not, however, protect "true threats." *Schaler*, 169 Wn.2d at 283. "A true threat is a 'statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'" *Schaler*, 169 Wn.2d at 283 (quoting *Kilburn*, 151 Wn.2d at 43). "The First Amendment prohibits the State from criminalizing communications that bear the wording of threats but which are in fact merely jokes, idle talk, or hyperbole." *Schaler*, 169 Wn.2d at 283 (citing *Kilburn*, 151 Wn.2d at 43).

The trial court must give the jury an instruction defining "true threats" for several types of crimes. *See State v. Allen*, 176 Wn.2d 611, 628-30, 294 P.3d 679 (2013) (felony harassment); *Schaler*, 169 Wn.2d at 287 (threats-to-kill provision of harassment statute); *State v. Johnston*, 156 Wn.2d 355, 364, 127 P.3d 707 (2006) (bomb threat statute); *State v. Ballew*, 167 Wn. App.

---

[2] RCW 9A.72.110 (1) provides:
    A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to:
        (a) Influence the testimony of that person;
        (b) Induce that person to elude legal process summoning him or her to testify;
        (c) Induce that person to absent himself or herself from such proceedings; or
        (d) Induce that person not to report the information relevant to a criminal investigation.

359, 370, 272 P.3d 925 (2012), *review denied*, 175 Wn.2d 1019 (2012) (threatening to bomb or injure property); *State v. Tellez*, 141 Wn. App. 479, 484, 170 P.3d 75 (2007) (felony telephone harassment based on a threat to kill); *see also State v. Brown*, 137 Wn. App. 587, 589, 154 P.3d 302 (2007) (insufficient evidence to show a future threat on charge of intimidation of a judge). But the instruction is not required in all cases. *See Schaler*, 169 Wn.2d at 287 (no "true threat" instruction is necessary when instructions given require a mens rea as to the result); *King*, 135 Wn. App. at 666-67 (witness intimidation does not prohibit constitutionally protected speech); *State v. Edwards*, 84 Wn. App. 5, 12, 924 P.2d 397 (1996) (State need not prove that threat to injure property is a "true threat" because RCW 9.61.160 criminalizes communicating a threat, not the defendant's intent to carry it out); *but see State v. Johnston*, 156 Wn.2d 355, 364, 127 P.3d 707 (2006) (RCW 9.61.160 is limited to true threats).

In *Schaler*, our Supreme Court provided an analytic format for resolving whether a "true threat" instruction is necessary. 169 Wn.2d at 286-87. The key question the Court asked was whether the statute included a mens rea as to the proscribed result and, if not, a "true threat" instruction was necessary to protect the defendant's right of free speech. 169 Wn.2d at 287. The trial court instructed the *Schaler* jury that Schaler had to intend to communicate a threat. 169 Wn.2d at 286. The instructions did not, however, require the jury to find that Schaler intended that the person threatened reasonably fear that the threat would be carried out. 169 Wn.2d at 286. The Court held:

> Because the First Amendment requires [the mens rea of] negligence as to the result but the instructions here required no mens rea as to result, the jury could have convicted Schaler based on something less than a "true threat." The instructions were therefore in error.

Because they did not comply with the First Amendment's "true threat" requirement, the instructions given at trial allowed the jury to convict Schaler based on his utterance of protected speech.

*Schaler*, 169 Wn.2d at 287 (footnotes omitted).

Here, the instructions do not suffer a similar flaw as they required the jury to find an intentional act; namely, that Clark, by use of a threat, "attempted to induce that person not to report the information relevant to a criminal investigation." CP at 57. The trial court relied on *King*. 135 Wn. App. at 662. But *Shaler* superseded *King* and presents the analytic framework to apply in "true threat" cases and therefore we need not address whether the trial court's reliance on *King* was appropriate. Focusing on the criminal statute's mens rea element as in *Schaler* demonstrates that the State had to prove that Clark threatened a potential witness in an attempt to induce that witness not to report what she knew to the police. In other words, the State had to prove that Clark made a true threat. The element of inducing the witness not to report supplies the mens rea for the result that *Schaler* requires. Clark's proposed instruction was unnecessary and therefore the trial court did not err or impinge on Clark's First Amendment rights in refusing to give it to the jury.

We affirm.

Worswick, C.J.

We concur:

Penoyar, J.

Bjorgen, J.

6