# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-2800

_____

United States of America,

*Plaintiff - Appellee,*

v.

Lona Lee Colhoff,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the District of South Dakota - Rapid City

_____

Submitted: May 19, 2016
Filed: August 19, 2016

_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Lona Lee Colhoff on two counts of conspiracy to distribute a controlled substance, *see* 21 U.S.C. §§ 846, 841(a), (b)(1), and one count of attempted witness tampering, *see* 18 U.S.C. § 1512(b)(1). The district court[1]

_____

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

sentenced Colhoff to concurrent forty-five month sentences for each conviction. On appeal, Colhoff argues that the conspiracy charges and the witness-tampering charge were improperly joined. She also challenges the sufficiency of the evidence on the witness-tampering conviction and asserts that the statement underlying her conviction was protected expression under the First Amendment. We affirm.

I.

This case involves the prosecution of a drug-distribution network headed by Colhoff's brother, Gerald LeBeau. Gerald relied on a network of family members and friends to transport, store, and distribute cocaine and marijuana on and around the Pine Ridge Indian Reservation. His distribution network included his siblings (Colhoff, Twila LeBeau, and Marlyn "Tuck" LeBeau, Sr.), sons (Neil and Pablo LeBeau), wife (Marie Zephier), sisters-in-law (Whitney Zephier and Kateria Patton), and mother-in-law (Susan Schrader).

Gerald stored drugs and money at Colhoff's house. Several of Gerald's dealers testified to obtaining drugs for distribution from Colhoff's home. Gerald was present for some of these transactions, but dealers also would pick up the drugs directly from Colhoff and deposit money with her for Gerald. Gerald was arrested in 2011 for a supervised release violation and in 2014 for possession of cocaine. While Gerald was incarcerated, Colhoff collected money on Gerald's behalf, coordinated at least one delivery of cocaine, and conveyed messages from Gerald to other members of the conspiracy.

A grand jury charged Colhoff, along with Twila and Pablo LeBeau, with two counts of conspiracy to distribute a controlled substance. A separate indictment charged Susan Schrader, Whitney and Marie Zephier, and two others with various conspiracy and distribution offenses. There was testimony in the Colhoff trial that Schrader and her co-defendants, like Colhoff, were involved with Gerald LeBeau's

-2-

drug-distribution operation. With the exception of Colhoff and Schrader, all of the defendants named in the two indictments pleaded guilty.

Schrader's trial commenced first. The same FBI agent was the case agent for both the Schrader and Colhoff trials, and several witnesses were scheduled to testify at both trials. Tr. 57. The government subpoenaed Colhoff's brother, Tuck LeBeau, as a potential witness against Schrader. On the second day of the Schrader trial, Colhoff transported Tuck to the United States Attorney's Office and waited for him in the lobby. Brady Ferguson was also present in the lobby. Ferguson had also been subpoenaed to testify in the Schrader trial and was present for a meeting with Officer Preston Patterson, a state law enforcement officer tasked to the FBI Drug Task Force. For at least part of this time, Colhoff and Ferguson were alone.

Ferguson testified that after Tuck left the waiting room, Colhoff threatened him for "snitching" on a fellow Native American. Specifically, Colhoff told him:

> I don't understand you guys just f***ing turning against your own people. All they are trying to do is divide and conquer the people. . . . Just a bunch of snitches. Do the crime, but can't do the time. Why don't you guys just do the time? . . . Snitches get stitches. That's all you guys are. That's all you guys are, snitches. . . . Should have listened to Russell Means.

Ferguson testified that he did not know Colhoff, and that he suspected at the time that she was Schrader's sister. Ferguson reported this perceived threat to Patterson. Based on Colhoff's statement to Ferguson, the government obtained a superseding indictment and added a charge of attempted witness tampering against Colhoff. A jury later convicted Colhoff on all counts.

II.

Colhoff argues that the conspiracy charges were improperly joined with the witness-tampering charge. Joinder of offenses is permissible when the charges "are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8(a) is "broadly construed in favor of joinder to promote judicial efficiency." *United States v. McCarther*, 596 F.3d 438, 441-42 (8th Cir. 2010). Colhoff did not challenge the joinder in the district court, so we review for plain error. *United States v. Yates*, 734 F.2d 368, 370 (8th Cir. 1984); *see* Fed. R. Crim. P. 52(b).

Witness tampering is "factually interrelated" with the proceeding in which the defendant attempted to interfere. *United States v. Rock*, 282 F.3d 548, 552 (8th Cir. 2002); *accord United States v. Mann*, 701 F.3d 274, 289-90 (8th Cir. 2012). Joinder of a tampering or obstruction charge with an underlying substantive offense is proper, because the former is "connected to, and interrelated with" the latter. *United States v. Little Dog*, 398 F.3d 1032, 1037 (8th Cir. 2005). While our prior decisions involved attempts by a defendant to obstruct his own prosecution, we do not think it was plain error for the district court to extend the logic to an attempt to impede the prosecution of another drug trafficker who was supplied by the same person as the defendant. Colhoff and Schrader were charged in separate indictments with conspiring to distribute drugs. There was evidence at Colhoff's trial that Gerald LeBeau distributed cocaine to both women for redistribution. Witnesses in the Colhoff trial implicated Schrader as one of the people who sold or stored cocaine for Gerald LeBeau. Tr. 125-26, 172-73, 195-98, 238-39, 264. One of Gerald's drug dealers, Pat Brewer, testified that he picked up cocaine for distribution from Schrader and Colhoff. Tr. 238-42. Because there was a reasonable basis to conclude that Colhoff and Schrader were involved in a common scheme to distribute drugs, the

court did not plainly err by permitting joinder of Colhoff's conspiracy charges with the charge that she attempted to tamper with a witness against Schrader.

The evidentiary overlap between the conspiracy charges and the witness-tampering charge further demonstrates the interrelatedness of the charges. Evidence of Colhoff's attempted tampering would have been admissible in a stand-alone conspiracy trial as an act in furtherance of the conspiracy to show the existence of an agreement. *See United States v. Madrigal*, 152 F.3d 777, 780 (8th Cir. 1998). At least some evidence of the drug conspiracy would be admissible to show motive in a stand-alone prosecution for attempting to intimidate Ferguson. *See* 1 Kenneth S. Broun, *McCormick on Evidence* § 190, at 1042-43 (7th ed. 2013). Because evidence pertaining to both charges likely would have been admissible in separate trials, Colhoff also cannot show a reasonable probability that joinder affected the outcome of the proceedings. *See United States v. Olano*, 507 U.S. 725, 734 (1993). For these reasons, we conclude that there was no plain error warranting relief.

## III.

Colhoff also challenges her conviction for witness tampering. She argues that the government produced insufficient evidence on the element of intent. Colhoff was convicted of violating 18 U.S.C. § 1512(b)(1). That statute requires the government to show that Colhoff knowingly attempted to "use[] intimidation, threaten[], or corruptly persuade[] another person" with the intent to "influence, delay, or prevent" testimony in an official proceeding. Here, the government's theory was that Colhoff attempted to intimidate or threaten Ferguson to prevent his testimony in Schrader's trial. Evidence is sufficient to support a conviction if any reasonable jury could have found the disputed element beyond a reasonable doubt. *See United States v. Johnson*, 745 F.3d 866, 869 (8th Cir. 2014).

We conclude that there was sufficient evidence to support a finding that Colhoff intended to influence, delay, or prevent Ferguson's testimony in Schrader's trial. At the time of the incident, Ferguson was at the courthouse preparing for possible testimony against Schrader in an ongoing trial. Colhoff had accompanied Tuck LeBeau, who was also subpoenaed to testify in the Schrader trial, to the same waiting room where she encountered Ferguson. Colhoff attended portions of Schrader's trial and spent a lot of time in the witness check-in room. Tr. 56. Her statement directly accused Ferguson of "turning against [his] own people." It was reasonable for the jury to infer that Colhoff knew that Ferguson was present as a prospective witness against Schrader.

Colhoff's warning that "snitches get stitches" came in the middle of a diatribe about Native Americans like Ferguson assisting the federal government to "divide and conquer the people." She made this statement when she was in a room with a potential witness against Schrader while the trial was underway. She implored Ferguson not to "turn[] against your own people" and to "just do the time." From these facts, a jury reasonably could conclude that Colhoff intended to influence or prevent Ferguson's testimony in the Schrader trial. We therefore conclude that the evidence was sufficient to support Colhoff's conviction.

Colhoff contends alternatively that a conviction based on her statements to Ferguson violates her right to freedom of speech under the First Amendment. The district court did not address this point, and we find nowhere in the record where Colhoff raised a constitutional claim before this appeal. Accordingly, despite the government's reference on brief to *de novo* review of First Amendment claims, we review Colhoff's constitutional challenge to her conviction under the plain-error standard. *United States v. Bausch*, 140 F.3d 739, 741 (8th Cir. 1998); *see United States v. Bain*, 586 F.3d 634, 639 n.4 (8th Cir. 2009) (per curiam).

Colhoff's constitutional argument is that her statements to Ferguson were merely a "political rant" protected by the First Amendment, and that only a "true threat" of a type not present here may be proscribed by the criminal law. She cites *Virginia v. Black*, 538 U.S. 343 (2003), where the Court said that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death." *Id.* at 360. This court has concluded, before and after *Black*, that a "true threat" is "a statement that a reasonable recipient would have interpreted as a serious expression of an intent to harm or cause injury to another." *Doe v. Pulaski Cty. Special Sch. Dist.*, 306 F.3d 616, 624 (8th Cir. 2002) (en banc); *see United States v. Mabie*, 663 F.3d 322, 332-33 (8th Cir. 2011). We held in *United States v. Gavin*, 583 F.3d 542 (8th Cir. 2009), that a conviction under another subsection of the witness-tampering statute, 18 U.S.C. § 1512(a)(2)(A), did not infringe on First Amendment rights, because "threats of violence are . . . unprotected speech." *Id.* at 548 (alteration in original).

The prosecution focused on Colhoff's statement to Ferguson that "snitches get stitches." Ferguson testified that he perceived this statement as a threat and immediately reported it to Officer Patterson. Ferguson's reaction was evidence supporting an inference that a threat was made. *See United States v. J.H.H.*, 22 F.3d 821, 827-28 (8th Cir. 1994).

The phrase "snitches get stitches" may imply that violent reprisal should and will befall those who cooperate with law enforcement. In the proper context, these words would cause a reasonable person who is cooperating with investigators to fear bodily harm. Other courts have upheld convictions for witness tampering or witness intimidation based on this exact phrase. *See State v. Sabato*, 321 Conn. 729, 749 (2016); *People v. Horton*, 21 N.E.3d 207, 208-09 (N.Y. 2014); *State v. Clark*, 302 P.3d 553, 555-557 (Wash. Ct. App. 2013); *cf. Cantu v. Mich. Dep't of Corr.*, 653 F.

Supp. 2d 726, 744 (E.D. Mich. 2009) (finding that "snitches get stitches" was a "threat of physical harm [that] would without doubt deter an individual of ordinary firmness" from cooperating in an investigation). In *Clark*, the court ruled that a defendant made a "true threat" when he directed the statement to a witness in an attempt to induce that witness not to report what she knew to the police. 302 P.3d at 557.

The context in this case supports a conclusion that Colhoff's statement would cause a reasonable person in Ferguson's position to fear bodily harm. Ferguson was in the United States Attorney's Office as a potential witness against Schrader. In other words, he was there to "snitch"—the very act that Colhoff said was deserving of "stitches." Ferguson was not acquainted with Colhoff, so he did not know what she was capable of doing or whether she was prone to issue empty threats. Colhoff says it was unreasonable for Ferguson to fear harm from a sixty-year-old woman such as she. But a person who is not physically imposing can wield a firearm or other weapon, and there also is no requirement that the victim fear that the speaker herself will cause the stitches. Ferguson rightly surmised that Colhoff was connected to the Schrader family, and he reasonably could have interpreted the statement as a warning that an associate of Schrader's would harm him if he cooperated with the prosecution.

Colhoff did not request a specific jury finding on whether her conduct amounted to a "true threat," and she did not ask the district court to conduct an "independent examination" of the record to ensure that the jury's decision did not intrude on protected expression. *Cf. Doe*, 306 F.3d at 621. We accept for the sake of analysis that a "true threat" standard must be satisfied for a conviction based on the use of intimidation or a threat under § 1512(b). *Compare, e.g.*, *Clark*, 302 P.3d at 556-57, *with United States v. White*, 670 F.3d 498, 514-15 (4th Cir. 2012). Even so, there was sufficient evidence here to support a conclusion that Colhoff made a true threat that would place a reasonable person in fear of bodily harm. At a minimum,

under the plain-error standard, her claim of protected expression is "subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). There was no plain error in entering a judgment of conviction on this record.

\* \* \*

The judgment of the district court is affirmed.

_____