# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58914-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| KENNETH ALVIN CUPPS, | |
| Appellant. | |

CHE, J. — Kenneth Alvin Cupps appeals his convictions for second degree assault and intimidating a witness, both with deadly weapon sentencing enhancements.

Cupps stabbed Kevin Burruss in the abdomen after the two had an altercation during which Burruss spat in Cupps' face. While Burruss called 911, Cupps said to Burruss, "If I serve a day in jail, you're dead."[1] The State charged Cupps with first degree assault and intimidation of a witness, both while armed with a deadly weapon other than a firearm.

At trial, Cupps claimed self-defense. The jury found Cupps guilty of the lesser degree crime of second degree assault and intimidation of a witness, and returned special verdicts that Cupps committed both crimes while armed with a deadly weapon other than a firearm.

Cupps argues on appeal that the State failed to prove beyond a reasonable doubt that (1) Cupps was not acting in self-defense when he assaulted Burruss and (2) Cupps intimidated Burruss.

---

[1] 4 Rep. of Proc. (Oct. 5, 2023) at 501.

No. 58914-1-II

We hold that sufficient evidence supports both convictions. Accordingly, we affirm

Cupps' convictions.

FACTS

One morning in March, 2023 Burruss stopped at a church parking lot while biking home

from work. Burruss regularly stopped at the parking lot on his way home from work to play a

popular location-based mobile device game. Burruss stayed about 15 minutes, smoking

marijuana and playing the game. Burrus then straddled his bicycle in preparation to leave but

kept playing the game on his phone.

Cupps and his friend both lived near the church. This same morning, Cupps and the

friend were walking down the street toward the church when they stopped to talk to a neighbor.

Cupps noticed Burruss bike up to the church and stop in the church's parking lot. After around

15 minutes, Cupps decided to approach Burruss:

> [b]ecause where [Burruss] was standing right on the corner of the church, it's not
> public property. It's private property.
>
> He had a hoodie on and he had his phone. It looked, to me, like he was
> taking pictures of my home and my vehicle and of the area -- of the homes that
> were alongside -- along [the s]treet. And that drew to my attention like why is he
> flashing his phone around?

4 Rep. of Proc. (Oct. 5, 2023) (4 RP) at 488. Cupps, with his phone out, approached Burruss to

take a photo of Burruss to see if Burruss "[was] up to no good" or not. 4 RP at 489.

When Cupps approached Burruss, Burruss was continuing to play the mobile device

game.[2] The two conversed, and Burruss assured Cupps that he was just playing the mobile

---

[2] Cupps was 53 years old at the time of the crime while Burruss was 31 years old.

2

game. The conversation devolved into both yelling at each other. At some point during their interaction, Cupps walked to within two feet of Burruss.

Burruss took his hood down and began to get agitated when Cupps tried to take Burruss' photo. Cupps called Burruss "a weirdo," "a liar," "a homeless piece of sh[]t," and "a waste of space." 4 RP at 396. Then Cupps told Burruss that his "mother should have swallowed [him]." 4 RP at 396. Burruss spat on Cupps' face. Cupps yelled back to his friend, "look, he spit in my face. Did you see that []? He spit in my face." 3 RP (Oct. 4, 2023) (3 RP) at 300.

Burruss then turned his bike's handlebars to leave the parking lot, but Cupps grabbed a handlebar and pulled downward, forcing Burruss to step off his bike while his bike fell to the ground. Sometime between Burruss spitting on Cupps and Burruss trying to get his bike back up, Cupps stabbed Burruss in his abdomen with a knife. Burruss claimed he never swung at Cupps.

Cupps' friend testified that, after Burruss spat on Cupps, Cupps pushed Burruss from the back and Burruss then fell off his bike. "[M]aybe five to ten seconds at most" elapsed between Cupps telling him that Burruss spat in his face and Cupps pulling down Burruss' bike. 3 RP at 301. Burruss then stated, "You stabbed me." 3 RP at 301. Cupps responded, "Darn right I did." 3 RP at 301. The friend further testified that, prior to Burruss falling off his bike, the two were mutually engaged in "soft pushing" of the other during their verbal altercation. 3 RP at 314. While he observed the two being physical, Cupps' friend was not sure if either Burruss or Cupps swung at the other during this time. Cupps' friend also observed another individual and testified that the other individual was not involved in Cupps and Burruss' altercation but appeared sometime after to take care of Burruss' bike for him.

Another witness, someone walking their dog, observed Burruss and Cupps verbally arguing before Cupps forced Burruss to fall off his bike. The witness believed Cupps kicked Burruss off his bike as the witness observed Cupps' leg in the air at the same time he saw Burruss' bike fall. According to this witness, he then observed the two "square off" and begin swinging at each other at the same time. 3 RP at 344. During this time, Burruss told Cupps, "I'm going to eff you up . . . I'm going to eff you up now." 3 RP at 331. The witness testified that Cupps stabbed Burruss "[a]lmost instantly" after Burruss spat on Cupps and Cupps kicked Burruss off his bike. 3 RP at 333.

Cupps claimed self-defense and admitted to stabbing Burruss. According to Cupps, after Burruss spat in Cupps' face, Burruss placed his bike down around ten feet away from Cupps when another individual, someone Burruss had been previously smoking with, came out of the bushes at the corner of the church. Cupps testified that this other individual remained around 20 feet away from him and Burruss during their altercation, "just standing off the corner of the church watching." 4 RP at 498.

Cupps "[got] the feeling that [Burruss] [was] going to try to attack me." 4 RP at 496. Cupps then pulled out his knife. Burruss looked at Cupps, stood up, and asked Cupps if he was going to stab him. Cupps responded, "You better stay away from me." 4 RP at 498. Burruss then "comes to me, rushes me, and throws a punch at my head. He tried to punch me in the head. I blocked his punch -- his right fist punch with my left arm, and I stabbed him in his side with my right hand." 4 RP at 498. When Burress stated that Cupps had stabbed him, Cupps responded, "You're damn right I stabbed you." 4 RP at 501. According to Cupps, this interaction occurred within a matter of seconds. Cupps testified that he held up the knife so that

"[Burruss] [would] stay away from me. I'm an old man. I didn't want to run. I didn't want to try to turn and try to run. I figured if I warned him, he would stay away from me." 4 RP at 500.

After Burruss realized he had been stabbed, he called 911. When Burruss told Cupps he was going to call the police, Cupps stated, "Please do. Someone needs to call the police. We need the police here." 4 RP at 501.

While Burruss was on the 911 call, Cupps yelled that his name was "Lord God Almighty" and said "If I serve a day in jail, you're dead." 4 RP at 501. Cupps admitted to saying such. Cupps testified that he did not intend to actually harm Burruss if he went to jail. Cupps claimed he made these statements because he was "being a smart aleck" and because "I was mad at [Burruss]." 4 RP at 501. Cupps was frustrated, mad that Burruss "attacked" him, and "kind of emotionally compromised . . . in a way." 4 RP at 502. Part of Cupps' frustration stemmed from knowing he was going to get into trouble because he had "some criminal history." 4 RP at 502.

Cupps' statement caused Burruss to feel "worried speaking to police because [Burruss] was afraid of repercussions from [Cupps]." 4 RP at 440. Burruss was also concerned about going to court.

Burruss underwent exploratory surgery where a doctor found him to have injuries to the muscles in front of his abdominal cavity due to the stabbing.

The State charged Cupps by amended information with first degree assault and intimidating a witness, both while armed with a non-firearm deadly weapon. At trial, the court provided self-defense instructions to the jury. The court also provided a jury instruction stating:

> Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened.

5

> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk. In addition, the speaker must know of and disregard a substantial risk that the statement or act would be interpreted in that manner.

Clerk's Papers (CP) at 219.

The jury found Cupps guilty of second degree assault, as the lesser degree crime for first degree assault, and of intimidating a witness. The jury also returned special verdict forms for both crimes, finding that Cupps was armed with a deadly weapon at the time of the commission of the crimes. The trial court sentenced Cupps to 101 months of total confinement and 30 months of community custody.

Cupps appeals.

## ANALYSIS

Cupps argues that insufficient evidence supported the jury's verdicts finding Cupps guilty of second degree assault and intimidating a witness. We disagree.

A. *Standard of Review*

To determine whether sufficient evidence supports a criminal conviction, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion)). An insufficiency of the evidence claim admits the truth of the State's evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When a criminal defendant raises a sufficiency of the evidence claim, we draw all reasonable inferences from the evidence in favor of the State and interpret such

6

inferences "'most strongly against the defendant.'" *Scanlan*, 193 Wn.2d at 770 (quoting *Salinas*, 119 Wn.2d at 201).

Both circumstantial and direct evidence are equally reliable in our inquiry. *Id.* However, "'inferences based on circumstantial evidence must be reasonable and cannot be based on speculation.'" *Id.* at 771 (quoting *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013)). We do not review credibility determinations or resolve conflicting testimony as they are for the trier of fact to determine, and we defer to the jury's decisions regarding the persuasiveness and appropriate weight to be given to evidence. *State v. Restvedt*, 26 Wn. App. 2d 102, 116, 527 P.3d 171 (2023); *State v. McCreven*, 170 Wn. App. 444, 477, 284 P.3d 793 (2012).

B.      *The State Presented Sufficient Evidence to Disprove Cupps' Self-Defense Claim Beyond a Reasonable Doubt*

Cupps argues that the State failed to prove beyond a reasonable doubt that Cupps did not act in lawful self-defense from Burruss. We disagree.

It is the State's burden to prove all essential elements of a crime beyond a reasonable doubt. *Matter of Arntsen*, 2 Wn.3d 716, 724, 543 P.3d 821 (2024). When a defendant properly raises self-defense in an assault prosecution, "the State must disprove self-defense beyond a reasonable doubt." *State v. Acosta*, 101 Wn.2d 612, 618-19, 683 P.2d 1069 (1984).

In a self-defense claim, "[t]he use of force is lawful and justified where the defendant has a 'subjective, reasonable belief of imminent harm from the victim.'" *State v. Grott*, 195 Wn.2d 256, 266, 458 P.3d 750 (2020) (quoting *State v. LeFaber*, 128 Wn.2d 896, 899, 913 P.2d 369 (1996), *abrogated on other grounds by State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009)). It is lawful for a person to use force upon or toward another "[w]henever [the force is] used by a party about to be injured . . . in preventing or attempting to prevent an offense against his or her

7

person . . . [and] the force is not more than is necessary." RCW 9A.16.020(3); *see Grott*, 195 Wn.2d at 266. "'Necessary' means that no reasonably effective alternative to the use of force appeared to exist and that the amount of force used was reasonable to effect the lawful purpose intended." RCW 9A.16.010(1). Evidence of self-defense is assessed "from the standpoint of the reasonably prudent person, knowing all the defendant knows and seeing all the defendant sees." *State v. Janes*, 121 Wn.2d 220, 238, 850 P.2d 495 (1993).

Cupps does not dispute he stabbed Burruss; however, he claims the State failed to disprove his self-defense claim. Cupps argues that he had a lawful right to defend himself by stabbing Burruss because, in Cupps' subjective perspective, he believed he was going to be hit by Burruss and possibly the other person who appeared from the bushes.

Viewing the evidence in the light most favorable to the State, although Burruss spat on Cupps, there is evidence that Burruss did not swing at Cupps. Burruss testified that he turned to ride away on his bike but fell off the bike when Cupps forced his bike to the ground. In the very short period of time between Burruss spitting on Cupps and Burruss trying to get his bike up, Cupps stabbed Burruss. One witness testified that this occurred "[a]lmost instantly." 3 RP at 333.

As Cupps acknowledges in his briefing, "[w]itness accounts varied about what happened" after Burruss spit on Cupps' face. Br. of Appellant at 4. Cupps relies on his own testimony, as well as the testimony from the witness who was walking his dog, in arguing that this brief period of time was when Burruss made Cupps feel like Burruss was going to attack him and that Burruss allegedly swung at him. However, another witness testified that, during this period of mere seconds, both Cupps and Burruss swung at each other at the same time. Contrary to these witnesses' testimony, Burruss claimed he never swung at Cupps. Also, Cupps' friend testified

8

that he was not sure if either Burruss or Cupps swung at each other during the altercation. As we are reviewing an insufficient evidence claim, we view the evidence in the light most favorable to the State and accept the State's evidence as true, and we do not resolve conflicting testimony or reweigh the evidence. *Salinas*, 119 Wn.2d at 201; *McCreven*, 170 Wn. App. at 477.

Cupps also suggests that the presence of the third party, who appeared from nearby bushes, created a reasonable belief of imminent harm. However, Cupps admitted that this individual merely came out of the bushes, remained 20 feet away from Cupps throughout his and Burruss' altercation, and just watched them. Cupps claims that his friend observed a third party pushing Cupps after Burruss spat on Cupps. But, in the record before us, Cupps' friend did not testify as such and, instead, stated that the third party appeared sometime after and was not involved in the altercation.

Given the record before us, sufficient evidence supports a rational jury finding that the State disproved beyond a reasonable doubt Cupps' self-defense claim because Cupps did not have a subjective, reasonable belief of imminent harm from Burruss.

Cupps asserts that, because he was older than Burruss and with the other man observing them, it was unlikely Cupps would be able to defend himself in a fist fight. Cupps does not explain how the other person's mere presence contributed to a reasonable belief that *Burruss* would imminently harm him. Additionally, a 22-year difference in age between Cupps and Burruss alone does not necessarily allow the older individual to automatically increase their defensive response. The standard for the use of force in self-defense remains the same. *See* RCW 9A.16.020(3), *Grott*, 195 Wn.2d at 266.

The State established beyond a reasonable doubt that no reasonably prudent person, knowing all that Cupps knew and seeing all that Cupps saw, could have believed that Cupps used

9

a reasonable amount of force given the circumstances and that no reasonably effective alternative to stabbing Burruss existed in the moment. Even according to Cupps' versions of the events, Cupps was able to successfully block an alleged attempted punch by Burruss. And only seconds separated Burruss' alleged attempted hit and Cupps stabbing Burruss, so Cupps acted relatively agilely.

Viewing the evidence and all reasonable inferences in the light most favorable to the State, a rational jury could have found beyond a reasonable doubt that the State disproved Cupps' self-defense claim because from the standpoint of a reasonably prudent person, Cupps did not have a subjective, reasonable belief of imminent harm from Burruss or that stabbing Burruss was a force not more than necessary given the circumstances. Accordingly, we hold that Cupps' sufficiency of the evidence challenge to the second degree assault conviction fails.

C.    *Sufficient Evidence Supported the Jury's Finding that Cupps Intimidated Burruss*

Cupps argues that insufficient evidence supported his intimidation of a witness conviction. We disagree.

The jury convicted Cupps of intimidating a witness contrary to RCW 9A.72.110(1)(d). Under this statutory provision:

> (1) A person is guilty of intimidating a witness if a person, by use of a threat against a current or prospective witness, attempts to:
> . . . .
> (d) Induce that person not to report the information relevant to a criminal investigation . . ., not to have the crime . . ., or not to give truthful or complete information relevant to a criminal investigation.

RCW 9A.72.110(1)(d).

Cupps first asserts that he made a hyperbolic statement, which did not amount to a "true threat." Br. of Appellant at 14. Cupps relies on *Counterman v. Colorado*, 660 U.S. 66, 143

10

in the context where a reasonable person, in the position of the speaker, would foresee that the statement would be interpreted as a serious expression of intent to carry out the threat." Br. of Appellant at 15. Cupps argues that the State failed to prove that a "reasonable person in [] Cupps' position, would foresee his hyperbolic statement would be interpreted as a serious expression of intent to carry out a threat." Br. of Appellant at 16-17. He additionally argues that the State failed show that Cupps knew of and disregarded a substantial risk that his statement would be interpreted as such a serious expression.

When the State is required to prove a "true threat" to avoid unconstitutionally infringing on protected speech, the State must prove "'that the defendant'—not just a reasonable person in their position—'consciously disregarded a substantial risk that [the] communications would be viewed as threatening violence.'"[3] *State v. Calloway*, 31 Wn. App. 2d 405, 419-20, 550 P.3d 77 (2024) (alteration in original) (quoting *Counterman,* 600 U.S. at 69. Jests, hyperboles, and "other statements that when taken in context do not convey a real possibility that violence will follow" are not "true threats." *Counterman*, 600 U.S. at 74.

---

[3] We do not decide whether the "true threat" standard applies to the crime of intimidating a witness; instead, we address Cupps' arguments as briefed. Both Cupps and the State describe the "true threats" requirement as applying to the crime of intimidating a witness; however, neither party cites to any case applying a "true threats" requirement to a charge of intimidating a witness under RCW 9A.72.110. Distinct from the felony harassment statute, which our case law has held requires the State to prove a "true threat" occurred, here, the intimidating a witness statute contains a specific definition for a "threat," and some case law has distinguished the crime of intimidation from harassment so as to not implicate First Amendment concerns. *See* RCW 9A.72.110(3)(a); *see also State v. Clark*, 175 Wn. App. 109, 115, 302 P.3d 553 (2013) (holding that a trial court did not err in refusing to give a "true threats" instruction when "[t]he element of inducing the witness not to report supplies the [required] mens rea"); *State v. King*, 135 Wn. App. 662, 671-72, 145 P.3d 1224, *review denied* 161 Wn.2d 1017 (2006) (holding that the statute's definition of a "threat" was sufficient and no separate "true threat" instruction was required); *but see State v. Gates*, noted at 157 Wn. App. 1058, 2010 WL 3565530, at *8 (rejecting *King*'s analysis and holding that the "true threat" standard applies to RCW 9A.72.110).

Here, the jury instructions required the State to prove that Cupps made a "threat" according to the following definition:

Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened.

To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk. In addition, the speaker must know of and disregard a substantial risk that the statement or act would be interpreted in that manner.

CP at 219. On appeal, Cupps does not assign any error to the jury instructions.

Cupps contends that, given the circumstances, no reasonable person in Cupps' position would foresee that his hyperbolic statement would be interpreted as a serious expression of a threat. However, Cupps told Burruss "If I do one day in jail, you are a dead man" while Burruss was on the phone with law enforcement and after Cupps had stabbed him. 4 RP at 439. Although Cupps testified that he made this statement in frustration and anger, the evidence shows that Burruss interpreted Cupps' statement as a threat. Also, given the circumstances in which the statement was made, Cupps at least knew of and consciously disregarded a substantial risk that Burruss, who had just been stabbed in the abdomen by Cupps, would interpret his statement as seriously expressing a threat.

Cupps contends that this statement was a hyperbole and that such is particularly evident by Cupps' encouraging Burruss to call the police. However, drawing all reasonable inferences from the evidence in favor of the State and interpreting such inferences "most strongly against the defendant," it is reasonable to infer that even such statements would only minimally dispel, if at all, the concerns of someone who had just been stabbed by the person making the threat. *Scanlan*, 193 Wn.2d at 770.

12

Cupps also asserts that the evidence was insufficient that he intimidated Burruss because he neither attempted to prevent Burruss from reporting a crime or having an alleged crime prosecuted nor induced Burress to not give truthful or complete information to the police. Cupps contends that his statement to Burruss, instead, "was an expression of his fear of going to jail." Br. of Appellant at 17.

Cupps testified that he did not intend to actually harm Burruss if he went to jail. However, in viewing the evidence in the light most favorable to the State and deferring to the jury on matters of conflicting testimony, a rational trier of fact could have concluded that Cupps used the threat to intimidate Burruss. Cupps made his statement to Burruss after he had just stabbed Burruss. Burruss was bleeding and on the phone with 911 when Cupps made the statement. Given Cupps' actions leading up to his statement, a rational trier of fact could have concluded as a matter of logical probability, that Cupps made the statement to Burruss while Burruss was reaching out to law enforcement in order to prevent Burruss from reporting a crime or having an alleged crime prosecuted or to induce Burress to not give truthful or complete information to the police responding to Burruss' call. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980) (jury can infer specific criminal intent of a defendant where such is a matter of logical probability).

We hold that both of Cupps' arguments here fail and, accordingly, sufficient evidence supported Cupps' intimidation of a witness conviction.

## CONCLUSION

We affirm Cupps' convictions.

13

No. 58914-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Lee, J.

Veljacic, A.C.J.