# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of<br>the Personal Restraint of<br><br>BRADLEY DAVID KNOX,<br><br>Petitioner. | No. 52971-8-II<br><br>UNPUBLISHED OPINION |

MAXA, J. – In this personal restraint petition (PRP), Bradley Knox seeks relief from personal restraint imposed following his convictions of unlawful possession of a controlled substance (methamphetamine) with intent to deliver, a violation of the Uniform Controlled Substances Act (VUCSA); two counts of unlawful possession of a firearm; bail jumping; and solicitation to commit first degree murder.

Knox's unlawful possession with intent to deliver, unlawful possession of a firearm, and bail jumping convictions arose from a search warrant executed by the Longview Police Department (LPD) at Knox's residence. Knox's solicitation to commit first degree murder conviction arose from conversations he had after his arrest with an informant in the Cowlitz County Jail.

Knox argues that (1) the State violated the *Brady*[1] rule when it failed to disclose certain impeachment evidence regarding the informant and exculpatory evidence on his VUCSA charge regarding a person named Cassandra Crimmins, (2) there were multiple conflicts of interest

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

involving the Cowlitz Office of Public Defense attorneys who represented Knox that denied Knox his right to effective assistance of counsel, (3) the entire Cowlitz County Prosecuting Attorney's Office should have been disqualified from his case because the elected prosecutor and his chief criminal deputy had disqualifying conflicts of interest, (4) Knox's right to an impartial judge was violated because the trial judge previously had represented the informant, (5) the trial court erred in not giving a true threat instruction in conjunction with the solicitation charge, (6) the State violated Knox's due process rights by failing to tie up impeachment questions it asked Knox, (7) there was insufficient evidence to support the possession with intent to deliver conviction because Knox's admission that he was a drug dealer could not be considered under the corpus delicti rule, (8) Knox's trial counsel provided ineffective assistance of counsel in a number of ways, (9) cumulative error deprived Knox of a fair trial, and (10) Knox's appellate counsel provided ineffective assistance of counsel in a number of ways.

We hold that Knox's claims have no merit or that he cannot show actual and substantial prejudice resulting from any errors. Accordingly, we deny Knox's PRP.

FACTS

*Knox's VUCSA, Firearm, and Bail Jumping Case*

In January 2014, the LPD's Street Crimes Unit executed a search warrant at 909 California Way in Longview. On the property was a motor home, owned by Knox, and a storage building containing a loft area where Christian Sullivan resided. Officers observed Knox leaving the property in a vehicle, and they stopped the vehicle and detained him. Knox had $2,405 on his person. According to one officer, Knox stated that he lived in the motor home, said how much meth there would be inside and where to find it, and that he was a lower-end drug dealer.

In the motor home, police seized 27.4 grams of methamphetamine, two handguns, and drug paraphernalia, including cellphones, plastic bags, and a digital scale. In the storage building, police seized firearms.

While officers were searching the motor home and storage building, Sullivan arrived in a vehicle. Officers stopped the vehicle and detained Sullivan and his three passengers, including Robert Tubbs. Methamphetamine was discovered during a search incident to their arrest.

The State charged Knox with unlawful possession of a controlled substance (methamphetamine) with intent to deliver and two counts of first degree unlawful possession of a firearm. Knox later was charged with bail jumping when he failed to appear for court.

The State charged Sullivan with unlawful possession of methamphetamine, second degree unlawful possession of a firearm, and first degree possession of stolen property. He pleaded guilty to all three charges.

The State charged Tubbs with attempted possession of methamphetamine and later bail jumping. He pleaded guilty to the attempted possession charge.

*Knox's False Imprisonment Case*

In August, Knox was driving with Hailey Crookshanks in his car when they got into an argument. Knox believed that Crookshanks was trying to steal his phone. According to Crookshanks, Knox started yelling at her and calling her profane names. Crookshanks started screaming for help, and a motorist stopped next to their vehicle and called the police. The State charged Knox with unlawful imprisonment.

*Knox's Solicitation Case*

Knox was detained in the Cowlitz County Jail. In September, a confidential informant also housed in the jail came forward with information concerning Knox. The informant stated

3

that Knox had approached him and solicited him to kill Crookshanks, Crimmins, and Steven Walker, Crimmins's boyfriend. According to the informant, Knox initiated most of the conversations and the informant would just be listening. The informant understood Knox would pay him for the work in cash and discounts on drugs.

According to the informant, Knox was upset with Crimmins and Walker because he had given them money to take on the charges against him for possession of methamphetamine and guns at his house. Knox became angry with Crimmins and Walker because they had not yet come forward. Because Crimmins and Walker had used the money to buy a truck, Knox suggested that their truck be "[b]lown up or run off the road or something." Report of Proceedings (RP) at 606.

With respect to Crookshanks, the informant stated that Knox "said the best thing to do with her because she's a heroin addict would be to give her a bad shot or shove her down the stairs where she lives at because nobody pay any difference." RP at 605.

The informant testified that he came forward with this information for two reasons. First, "Knox was asking everybody in . . . jail to kill those guys for him," and "if [he] allowed that to continue without doing something about it" he would be "no better than [Knox] is." RP at 631-32. Second, the informant testified that he was hoping to get a benefit from this information as well.

After coming forward with the information regarding Knox, the informant agreed to wear a body wire to record his conversations with Knox. In October 2014, the informant recorded a conversation with Knox in the jail through the body wire. The State played portions of the audio recording at trial. On the wire, Knox can be heard asking the informant to kill Walker. There was no discussion on the wire of killing Crimmins or Crookshanks.

4

The State charged Knox with three counts of solicitation to commit first degree murder relating to Crimmins, Walker, and Crookshanks.

At trial, defense counsel cross-examined the informant about his previous contracts with the LPD's Street Crimes Unit and underlying motivations for coming forward. The informant acknowledged that he previously had worked as a confidential informant but was back in jail on drug charges. He testified that he had four outstanding criminal charges for two counts of possession with intent to deliver in a school bus zone, possession of methamphetamine, and tampering with evidence. By informing on Knox, the informant expressly stated he was hoping to get a benefit.

*Knox's Defense Counsel*

Before trial, Knox was represented by three different defense counsel. In January 2014, Cowlitz Office of Public Defense (OPD) attorney Josh Baldwin was appointed to represent Knox. In February, Baldwin had to withdraw from representing Knox. Baldwin cited conflict with Thad Scudder – a fellow OPD attorney representing Sullivan, a codefendant in Knox's VUCSA case – as the reason for his withdrawal.

Kevin Blondin then was appointed to represent Knox. In October 2014, Blondin withdrew from representing Knox at a trial readiness hearing, citing an inability to adequately communicate with Knox.

Baldwin once again was appointed to represent Knox. In a declaration, Baldwin explained that the OPD maintained a process for checking for conflicts at that time. According to Baldwin, when the public defender's office was appointed to represent someone, the clerk would send a list of cases to Terry Mulligan, OPD's director. Ex. 32 at 756. Mulligan then would check for conflicts. When Baldwin received Knox's VUCSA case back from Blondin, he

5

assumed that Mulligan had done a new conflicts check. Mulligan may have thought that Sullivan's case had resolved and there no longer was a conflict.

In March 2015, Scudder appeared on behalf of Baldwin for Knox to request that a hearing be set over. In or around April, the State moved to join Knox's VUCSA case with his two other cases involving unlawful imprisonment and solicitation to commit first degree murder. Baldwin represented Knox in filing a motion opposing the joinder of all three cases.

In May, Baldwin left the OPD. At that time, OPD attorney Simmie Baer was appointed to represent Knox in all three cases. Baer represented Knox up until his appeal. In her declaration, Baer stated that she assumed that when she took over Knox's cases that any issues about conflicts of interest had already been resolved.

*Cowlitz County Prosecutors: Jurvakainen and Ladouceur*

Ryan Jurvakainen was an OPD attorney. Previously, Jurvakainen had been appointed to represent Tubbs in the case arising from the search warrant executed at Knox's residence. Jurvakainen later withdrew from representing Tubbs because OPD was then representing the listed co-defendant.

In November 2014, Jurvakainen was elected Prosecutor of Cowlitz County. Thomas Ladouceur, another OPD attorney, became Jurvakainen's chief criminal deputy. Previously, Ladouceur had represented the informant in two separate matters: a probation violation in 2012; and drug charges and evidence tampering in 2014. In September 2014, Ladouceur had moved to withdraw from the second matter.

Jurvakainen disqualified himself from Knox's solicitation and unlawful imprisonment cases and Ladouceur disqualified himself from all three cases. Screening mechanisms were in place to prevent them from having any involvement in these cases.

In their capacity as OPD attorneys, neither Jurvakainen nor Ladouceur ever represented Knox.

*Withheld Evidence Concerning the Informant and Crimmins*

Before trial, Knox's defense counsel, Baer, requested that the State produce all material related to the informant and his criminal history. The prosecutor sent Baer an email listing only the informant's convictions. He also provided the informant's informant packet, including various police reports related to the informant's theft case and drug cases.

The State failed to disclose several police reports documenting the informant's history of alleged sexual misconduct, including that a minor had accused him of sexually abusing her and an adult had accused him of raping her. There also had been allegations that the informant molested his grandchildren. And in one of the reports, the informant allegedly admitted to continuing to buy and sell drugs after his release from jail in 2014.

In addition, the State failed to disclose two police reports that appeared to document a connection between Crimmins and Knox's residence at 909 California Way.

*Trial*

Knox's VUCSA, false imprisonment, and solicitation charges were consolidated and went to trial in October 2015. Judge Michael Evans presided over the trial.

The informant testified as described above. He also stated that Knox told him that he paid Crimmins money on the condition that she and Walker would accept responsibility for his drug and firearm charges, and that Walker had bought a truck with the money.

On cross-examination of Knox, the prosecutor inquired about Crimmins and Walker.

Q. And you and your attorney in getting ready for [the drug and firearm] trial had previously indicated that Cassandra Crimmons [sic] was going to be your witness in the case, that she was going to testify that the guns belonged to her, right?

7

A. Was there something I could see to see where I said that?

Q. I'm just asking if you remember that or not?

A. I remember talking to my attorney about my case. I don't remember making any other statements.

Q. Okay. Well, not specifically asking what you told your attorney, that's privileged communication between the two of you. I'm just asking if you remember your attorney announcing that Cassandra is going to be your witness for the drug and gun case?

. . . .

A. Cassandra – if it's the same gun – bought a gun from T.J. Fox two days or three days before. Now, I don't know if that's the same gun. She said it was.

Q. So she could have been a witness in your gun case because that could have been her gun?

A. She could have been.

Q. Okay. And you had actually paid her $8,000 to testify for you that it was her gun?

A. No. No.

Q. You're denying that?

A. I am denying that.

Q. Okay.

A. I'm denying that I did that.

Q. And they didn't show up to testify. They actually took that $8,000 and bought a truck; didn't they?

A. I don't understand that because when I met Walker, he already had a truck, so I don't know where you guys are coming up with this stuff.

RP at 838-40.

8

The State never presented evidence that the payment to Crimmins was in the amount of $8,000, that Knox's attorney announced that Crimmins would be called as a witness, or that Crimmins failed to appear to testify.

In the jury instruction regarding solicitation to commit first degree murder, the trial court did not include a requirement that the solicitation constitute a true threat. And Knox did not request such an instruction.

During closing argument, defense counsel addressed the solicitation charge by trying to undermine the informant's credibility and arguing that Knox suffered from diminished capacity. She also addressed the VUCSA and firearm charges by arguing that Knox did not live at the motor home located at 909 California Way. Instead, she claimed that Knox was letting Sullivan stay there and that the guns, the drugs, and the paraphernalia seized in the motor home belonged to Sullivan.

*Verdict and Motion for New Trial*

The jury found Knox guilty of unlawful possession of a controlled substance (methamphetamine) with intent to deliver, two counts of first degree unlawful possession of a firearm, and bail jumping. The jury found Knox guilty of the solicitation to commit first degree murder regarding Walker, but found him not guilty of the charges regarding Crimmins and Crookshanks. The jury found Knox not guilty of the wrongful imprisonment charge.

On the last day of trial, defense counsel had received a signed declaration from Crimmins in which she took responsibility for the drugs and guns found at Knox's residence at 909 California Way. Knox did not file a motion for a continuance at that time. Instead, following the verdict, Knox moved for a new trial based on newly discovered evidence. Defense counsel later met with Crimmins in jail, who confirmed the contents of her statement.

The trial court denied the motion. The court found that defense counsel was aware when she took over the file that Crimmins had made a statement in which she claimed ownership of the drugs and firearms seized at Knox's motor home. Therefore, the court concluded that the statement had not been discovered since trial. As a collateral finding, the court found that Crimmins had told a detective that Knox had paid her $20,000 to write the statement. In addition, the court found that defense counsel had never listed Crimmins as a witness, sought a continuance to locate her, hired a private investigator to locate her, or sought a material witness warrant. The court concluded that Knox could not show that the evidence could not have been discovered before trial by the exercise of due diligence.

Knox appealed, and this court affirmed his convictions. *State v. Knox*, No. 48473-1-II, slip op. at 1 (Wash. Ct. App. Jun. 13, 2017) (unpublished), http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=484731MAJ. The only issue Knox raised on direct appeal concerned whether the trial court violated his public trial right by allowing the jury to hear and view during its deliberations audio and video exhibits that had been admitted at trial. *Knox*, No. 48473-1-II, slip op. at 1.

Knox then filed this timely PRP.

## ANALYSIS

A.    PRP PRINCIPLES

We will grant appropriate relief when petitioners establish that they are under restraint that is unlawful for one of certain specified reasons. RAP 16.4(a)-(c). To prevail in a PRP, a petitioner must establish (1) a constitutional error that resulted in actual and substantial prejudice, or (2) a fundamental defect of a nonconstitutional nature that inherently resulted in a

10

complete miscarriage of justice. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 154, 381 P.3d 1280 (2016). The petitioner must make this showing by a preponderance of the evidence. *Id.*

However, a PRP is not a substitute for a direct appeal, and the availability of collateral relief is limited. *Dove*, 196 Wn. App. at 153. " 'Relief by way of a collateral challenge to a conviction is extraordinary, and the petitioner must meet a high standard before this court will disturb an otherwise settled judgment.' " *Id.* (quoting *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011)).

RAP 16.7(a)(2) requires a petitioner to specifically identify the evidence available to support the factual allegations in the PRP. *In re Pers. Restraint of Wolf*, 196 Wn. App. 496, 503, 384 P.3d 591 (2016). A petition must state with particularity facts that, if proven, would entitle the petitioner to relief – bald assertions and conclusory allegations are not enough. *In re Pers. Restraint of Caldellis*, 187 Wn.2d 127, 146, 385 P.3d 135 (2016). If the petitioner's allegations are based on matters outside the existing record, he must demonstrate that he has competent, admissible evidence supporting the allegations. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013).

B.    *BRADY* VIOLATIONS

Knox argues that the State violated *Brady* when it failed to disclose certain information regarding the informant and Crimmins. We disagree.

1.    Legal Principles

Under *Brady* and its progeny, the State is required to turn over all potentially exculpatory evidence or evidence that could be used as impeachment evidence. *State v. Mullen*, 171 Wn.2d 881, 894, 259 P.3d 158 (2011). The due process clause in the Washington Constitution, article I,

section 3, extends the same protection. *State v. Armstrong*, 188 Wn.2d 333, 344, 394 P.3d 373 (2017).

The State has a duty to learn of any favorable evidence "known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). But there is no *Brady* violation if the defendant, using reasonable diligence, could have obtained the evidence. *State v. Thomas*, 150 Wn.2d 821, 851, 83 P.3d 970 (2004).

The defendant bears the burden of proving three elements of a successful *Brady* claim: (1) the evidence at issue must be favorable to the defendant, either as exculpatory or impeachment evidence; (2) the State must have withheld the evidence; and (3) the evidence must be material to the defense. *State v. Davila*, 184 Wn.2d 55, 69, 357 P.3d 636 (2015).

Evidence is "material" if there is a reasonable probability that, if it had been disclosed to the defense, the result of the proceeding would have been different. *Id*. at 73. A defendant need not demonstrate that he would be acquitted if suppressed evidence had been disclosed. *Id*. Under the reasonable probability standard, the defendant must show only that the State's suppression undermines confidence in the trial's outcome. *Id*. We evaluate the effect of the State's failure to disclose favorable evidence cumulatively and in the context of the entire record. *Id*. at 78.

Our review of *Brady* claims involves a mixed question of fact and law. *Id*. at 74. The first two *Brady* factors are factual questions. *In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 488, 276 P.3d 286 (2012). The third *Brady* factor is a question of law and fact. *Id*. But we review de novo the ultimate constitutional question of whether the State's failure to disclose certain information resulted in a due process violation. *Davila*, 184 Wn.2d at 75.

12

2.    Additional Information Regarding the Informant

Knox asserts that the State violated *Brady* by failing to disclose (1) police reports of the

informant's alleged history of sexual misconduct, (2) the informant's alleged admission that he

continued to buy and sell drugs after release from jail in October 2014, and (3) the informant's

favorable treatment from Cowlitz County Prosecuting Attorney's Office.  Knox argues that this

evidence would have provided an opportunity to impeach the informant by exposing his

motivation to testify favorably for the State.

a.    The Informant's Alleged Sexual Misconduct

First, police reports from January 2014 included an allegation from an adult female, MS,

that the informant raped her.  The allegation was made after an altercation between the informant

and MS in which he pushed her out of his bedroom and closed the door and she kicked a hole in

the door.  MS was charged with malicious mischief.  There is no indication in the reports that the

informant was charged.

Second, police reports showed that in January 2015, the mother of JE, a seven-year-old-

girl, reported to police that JE told her that the informant had rubbed her vaginal area.  An

investigation ensued, which included a forensic interview of JE and an interview of the

informant.  He denied the allegation.  Investigators also performed a computer voice stress test

on the informant and no deception was observed.  The investigation report noted past allegations

against the informant, including involving his grandchildren, which he denied.  The lead

investigator concluded that he could not establish probable cause that the informant had touched

JE in the vaginal area for sexual gratification.  The investigator stated that there was reason to be

concerned about the informant because of the past allegations, but that charges could not be

supported at that time.

Third, police reports show several allegations of sexual misconduct involving children. In September 1994, a girl alleged that the informant had touched her inappropriately and had forced her to masturbate him. She later recanted and refused to cooperate. In June 1996, two girls alleged that the informant had inappropriate sexual contact with them, including rape. He denied the allegations and blamed their mother for telling them to make the allegations. There is no indication in the record that the informant was charged based on this allegation.

In September 2002, a five-year-old girl alleged that the informant had inappropriate sexual contact with her. An investigation ensued, including interviews with the girl and the informant. He denied the allegation and passed a computer voice stress test.

The State concedes that it improperly failed to include these reports in its response to Knox's request for the informant's criminal history.

### b. The Informant's Alleged Admission Regarding Drugs

Knox asserts that the prosecutor committed misconduct by failing to disclose the informant's admission that he continued to buy and sell drugs after his release from jail in 2014. That admission appears in a police report disclosed for the first time after trial. In an interview with a detective in January 2015, the informant allegedly stated that he had stopped using and selling drugs only in the past month or so. Knox argues that the informant's admission would have been used to expose the informant's bias and destroy his credibility.

The State concedes that it improperly failed to include this report in its response to Knox's request for the informant's criminal history.

### c. The Informant's Favorable Treatment

Knox argues that the prosecutor committed misconduct by failing to disclose the State's alleged favorable treatment of the informant and the informant's apparent immunity from

prosecution after his release from jail in October 2014. Knox contends that he would have used this information in an effort to undermine the informant's credibility and demonstrate the informant's incentive to misrepresent the facts for selfish gain. The State concedes that it improperly failed to include certain police reports containing this information.

### d. *Brady* Elements

The State essentially concedes that Knox has established the second Brady element: the State failed to disclose requested information. However, the State argues that Knox cannot establish the first and third elements: that the undisclosed information was favorable to him as impeachment evidence and that the information was material.

### i. Favorable as Impeachment

The first Brady element requires the undisclosed information to be favorable to the defendant, either as exculpatory or impeachment evidence. *Davila*, 184 Wn.2d at 69. The State claims that the undisclosed information does not satisfy the first *Brady* element because it would have been inadmissible under ER 608(b).[2] We disagree.

Under ER 608(b), a party may inquire into specific instances of a witness's prior conduct, for purposes of impeachment only if the conduct is probative of the witness's truthfulness or untruthfulness. ER 608(b). And ER 608(b) expressly does not permit introduction of extrinsic evidence to prove specific instances of conduct.

ER 608(b) seems designed for prior conduct that is used to show only that the witness is untruthful and nothing else. *See* 5A KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW

---

[2] The admissibility of the undisclosed evidence also is an important aspect of materiality, the third *Brady* element. *Mullen*, 171 Wn.2d at 897. If the evidence is not admissible, it is unlikely that its nondisclosure could affect the outcome of the proceeding. *Id*.

AND PRACTICE § 608.2, at 428 (6th ed. 2016). Tegland states, "Rule 608 has been given a narrow reading even within the context of impeachment. The rule has been interpreted to apply only when evidence of reputation or specific conduct is offered on the issue of the witness's general *truthful* or *untruthful* character." *Id.* (emphasis added). In that situation, the evidence must be probative of truthfulness to be relevant.

But here, Knox argues that the prior conduct evidence could be used to show not that the informant was untruthful, but that he had a *motive* to lie – so that he would continue to avoid prosecution for the sexual misconduct allegations and his drug sales. Knox asserts that the informant's seeming immunity from prosecution would have been valuable impeachment evidence. Because the purpose of this impeachment evidence was to show motive and address substantive testimony, ER 608(b) is inapplicable. *See* TEGLAND, § 608.2 at 428-29.

We conclude that ER 608(b) would not have precluded Knox from introducing evidence concerning the 2014 and 2015 allegations of sexual misconduct against the informant and his continued drug use and sales to show at least his motive to tailor his testimony to favor the State. Therefore, we conclude that the evidence was favorable to Knox as impeachment.

ii.    Materiality – Probability of Different Result

Even if the undisclosed information was favorable impeachment evidence and admissible under ER 608(b), Knox still must establish that the additional evidence regarding the informant would have created a reasonable probability of a different result at Knox's trial. *Davila*, 184 Wn.2d at 73. Knox has failed to do so.

On direct examination, the informant admitted that he came forward with information about Knox's desire to have people killed because he was hoping to get a benefit. On cross-examination, the informant admitted that he was facing charges for two counts of possession

16

with intent to deliver in a school bus zone, possession of methamphetamine, and witness tampering that could put him in prison for 10 years. He did not deny that he set people up in exchange for deals with police so he did not have to go to prison. And he acknowledged that he was concerned about going to prison because he had been labeled a snitch, which could be dangerous to him.

The informant admitted that he had entered into contracts with the State in 2013 to work off a felony theft charge and in 2014 to work off charges for two sales of methamphetamine. One of the conditions of the contracts was that he not commit any new crimes or use illegal drugs. However, he violated these conditions and he was arrested in August 2014 for possession of methamphetamine and for tampering with evidence. So he ended up back in jail not only on new charges but on all earlier charges as well. The informant stated when he agreed to wear a body wire, he was told that if he was successful in getting the officers what they needed, all those charges would go away. The informant knew that if he got Knox to talk on the wire about killing people, he would not go to prison.

We must determine whether in light of this evidence that the jury did hear, evidence regarding the 2014 and 2015 sexual misconduct allegations and the informant's admission that he had taken and sold drugs after he left jail would have created a reasonable probability of a different result at Knox's trial. Significantly, the jury heard compelling evidence regarding the informant's strong motive to help the State. Multiple charges that could result in 10 years in prison would be dismissed. Prison was a dangerous place for someone like the informant who had turned in others. The potential that the informant might be charged with additional crimes would not add much.

Further, the rape allegation was complicated by the fact that it arose out of a domestic dispute where the alleged victim was charged with malicious mischief. It is unlikely that this allegation would have changed the result at trial.

On the other hand, the child molestation allegation was different in kind than his other charges. Child molestation is a much more serious offense with a potentially longer prison term if the informant was charged and convicted. The potential that the State might decide to charge the informant based on this allegation would have given him even more motivation to tailor his testimony to favor the State.

One significant factor here is that the jury acquitted Knox on two of the three solicitation charges. He was convicted only of the charge that was supported by the wire recording. In other words, the jury convicted on the charge supported by objective evidence but acquitted on the charges based solely on the informant's testimony. This result suggests that the jury did not find the informant particularly credible, possibly because of his motives. It also suggests that additional evidence about the informant's motives would not have made a difference.

We conclude that the information about the 2014 and 2015 sexual misconduct allegations against the informant and his admission that he used and sold drugs after leaving jail would not have created a reasonable probability of a different result at Knox's trial.

Regarding the sexual misconduct allegations against the informant in 1994, 1996 and 2002, these allegations were not material because they likely would have been inadmissible. Even if they were admissible, it is unlikely that these old and uncharged allegations would have affected the result at trial.

Finally, Knox argues that the informant's alleged sexual misconduct would have given him the opportunity to impeach the informant as to why he could not see his grandchildren. The informant testified that he did not get to see his grandchildren while he struggled with addiction. Knox contends that the more likely reason that the informant could not see his grandchildren was because he molested them. But it is unlikely that the trial court would have allowed this impeachment on a collateral matter.

Because Knox cannot satisfy the third element of a Brady violation, we hold that there was no *Brady* violation despite the State's failure to disclose information about the informant.

3.    Additional Information Regarding Crimmins

Knox argues that the State violated *Brady* by failing to disclose information connecting Crimmins to his residence. Specifically, the State failed to disclose police reports confirming that Crimmins stored her property at 909 California Way. We disagree.

An LPD incident report stated that Crimmins said that some of her clothes had been in the storage building on Knox's property. The State does not deny that it failed to disclose this information. Instead, the State argues that Knox already knew that she had a connection to his property.

There is no *Brady* violation where a defendant possesses the salient facts regarding the existence of the evidence that he claims was withheld. *Mullen*, 171 Wn.2d at 902. Therefore, "[i]f the nondisclosed information was available through the defense's own due diligence, there is no suppression under *Brady*." *Id*. at 903.

Here, the record shows that Knox had knowledge of Crimmins' connection to his residence. By Knox's own admission, an officer told him that the police had evidence Crimmins had stored her personal property at his residence and had been stopped trying to remove it. And

Knox states he told defense counsel about the report and wanted her to obtain the documentation, but there was no follow up.

Knox moved for a new trial based on CrR 7.5(3). In denying Knox's motion, the trial court concluded that Knox's defense counsel failed to use due diligence in locating Crimmins or securing her presence at trial. That finding is supported by substantial evidence. Crimmins was not named as a witness or subpoenaed. In addition, Knox never requested a continuance or a material witness warrant to secure Crimmins' presence at trial or hired a private investigator to locate Crimmins. Because Knox could have exercised due diligence to locate and interview Crimmins for additional information or request the report from the police, there was no suppression of Crimmins' connection to his residence.

There is no evidence that the State possessed any information about Crimmins beyond what Knox knew. Therefore, we hold that there was no *Brady* violation regarding Crimmins.

C.     CONFLICTS OF INTEREST AMONG DEFENSE COUNSEL

Knox argues that he received ineffective assistance of counsel due to a conflict of interest among his defense counsel. We disagree.

1.     Alleged Conflicts

Knox claims that his trial counsel had an actual conflict of interest that adversely affected her performance because (1) defense counsel (Baer) worked at OPD with Knox's pretrial counsel (Baldwin and Scudder), who jointly represented Knox and Sullivan, a codefendant in Knox's VUCSA case; and (2) all three defense counsel represented Knox at a time when OPD had no

20

regularly established conflict screening mechanism. Knox claims that Baer, Baldwin, and Scudder had access to confidential information regarding both clients.[3]

    2.    Legal Principles

The Sixth Amendment to the United States Constitution affords a criminal defendant the right to effective assistance of counsel, free from conflicts of interest. *State v. Kitt*, 9 Wn. App. 2d 235, 243, 442 P.3d 1280 (2019). To establish a Sixth Amendment violation based on a conflict of interest, the defendant must show "both that his attorney had a conflict of interest and that the conflict adversely affected counsel's performance." *State v. Reeder*, 181 Wn. App. 897, 909, 330 P.3d 786 (2014). If the defendant meets this two-part test, prejudice is presumed. *Id.*

"An actual conflict of interest exists when a defense attorney owes duties to a party whose interests are adverse to those of the defendant." *State v. White*, 80 Wn. App. 406, 411-12, 907 P.2d 310 (1995). The matters alleged to be in conflict must be "substantially related." *State v. MacDonald*, 122 Wn. App. 804, 813, 95 P.3d 1248 (2004).

To show that the conflict adversely affected his lawyer's performance, the defendant must show that the conflict either caused some deficiency in representation that affected the defendant's interests, or likely affected specific aspects of defense counsel's advocacy on the defendant's behalf. *State v. Regan*, 143 Wn. App. 419, 428, 177 P.3d 783 (2008). "[T]he possibility of a conflict [is] not enough to warrant reversal of a conviction." *State v. Dhaliwal*,

---

[3] Knox also claims that several other conflicts and potential conflicts must be considered, including (1) OPD's occasional representation of Walker; (2) Blondin's appearance for the informant and representation of Crimmins in an arson case; and (3) the association with OPD of another attorney who represented the informant. But evidence supporting a PRP must be based on more than speculation and conjecture. *Yates*, 177 Wn.2d at 18. Knox fails to demonstrate why these representations created a conflict or even argue how they actually and substantially prejudiced him. Therefore, we decline to address these alleged conflicts.

150 Wn.2d 559, 573, 79 P.3d 432 (2003). The defendant must show an actual conflict of interest and a "strong possibility" that the conflict affected defense counsel's performance. *Id.* at 574.

3.   Actual Conflict

Knox argues that there was an actual conflict of interest because both he and Sullivan were represented by OPD attorneys Baldwin and Scudder and he was later represented by another OPD attorney, Baer. We disagree.

First, Knox fails to show that he and Sullivan were represented by OPD at the same time. Baldwin only appeared once for Sullivan in requesting a set over in August 2014. At that time, he had withdrawn from Knox's case because of Scudder's representation of Sullivan. Baldwin was not reappointed to represent Knox until October 2014. And Scudder only appeared once for Knox in requesting a set over in March 2015. At that time, he had withdrawn from Sullivan's case in December 2014.

Second, Knox fails to show that appropriate screening mechanisms were not in place at OPD. He claims that there was no established conflict screening mechanism set up at OPD and therefore that Baer, Baldwin and Scudder had access to confidential information regarding both clients. But Baldwin's declaration attached to Knox's PRP shows that OPD maintained a process of checking for conflicts coordinated by OPD's director.

Third, Knox failed to show that Baer received any confidential information about Sullivan from Scudder or Baldwin, or that she has access to information that could create an active conflict of interest. Baer never represented Sullivan, and she was presumably screened from his case. Sullivan entered a guilty plea in April 2014, over a year before trial began in Knox's case, and Knox makes no showing that Sullivan's interests as a codefendant in the VUCSA case were adverse to his own.

Therefore, we conclude that Knox has failed to show an actual conflict of interest.[4]

D.    PROSECUTORS' CONFLICTS OF INTEREST

Knox argues that the Cowlitz County Prosecuting Attorney's Office should have been disqualified from prosecuting his case because the county's elected prosecutor, Jurvakainen, and his chief criminal deputy, Ladouceur, had disqualifying conflicts of interest. We disagree.

The general rule is that when the elected prosecutor previously has represented the defendant "in the same case or closely interwoven matter," disqualification of the entire prosecutor's office is presumptively proper. *State v. Nickels*, 195 Wn.2d 132, 138, 456 P.3d 795(2020). When a deputy prosecuting attorney is disqualified from a case and is effectively screened, disqualification of the entire office is not necessary. *State v. Stenger*, 111 Wn.2d 516, 522, 760 P.2d 357 (1988).

For an elected prosecutor's conflicts other than prior representation of the defendant, the general rule is as follows:

> Where the previous case is not the same case (or one closely interwoven therewith) that is being prosecuted, and where, for some other ethical reason the prosecuting attorney may be totally disqualified from the case, if that prosecuting attorney separates himself or herself from all connection with the case and delegates full authority and control over the case to a deputy prosecuting attorney, we perceive no persuasive reason why such a complete delegation of authority and control and screening should not be honored if scrupulously maintained.

*Id.* at 522.

Here, neither Jurvakainen nor Ladouceur represented Knox in this case or any other case before joining the prosecutor's office. Further, in a declaration Jurvakainen acknowledged that both had been disqualified from Knox's solicitation and wrongful imprisonment cases and

---

[4] Even assuming Knox could demonstrate an actual conflict of interest, we also conclude that he cannot show that any conflict had an effect on defense counsel's performance.

Ladouceur acknowledged that he had been disqualified from all three of Knox's cases. And both described the screening mechanisms used to prevent anyone in the prosecutor's office from involving them in these cases. Therefore, under *Nickels* and *Stenger*, there is no basis for disqualifying the entire office.

Knox points out that Jurvakainen never stated that he was disqualified from Knox's VUCSA case and that Jurvakainen's name continued to appear on pleadings in the solicitation case even though he claimed he was disqualified. Knox also emphasizes that Ladouceur was involved with the charging decision on one of the informant's sexual misconduct allegations even though he was a key witness in Knox's trial. However, even if some conflicts remained that violated Knox's constitutional rights, he still must show actual and substantial prejudice in order to prevail on his PRP. *Dove*, 196 Wn. App. at 154. Knox has not attempted to identity any *actual* prejudice that resulted from these alleged conflicts.

Therefore, we reject Knox's prosecutorial conflict of interest claim.

E.    TRIAL JUDGE'S FORMER REPRESENTATION OF THE INFORMANT

Knox argues that his right to an impartial judge was violated because the trial judge previously represented the informant. Knox contends that the trial judge violated due process by failing to disclose this representation and to recuse himself at trial. We disagree.

Initially, it is important to recognize that Knox expressly states that his claim involves a constitutional due process challenge, not an appearance of fairness challenge. Therefore, cases addressing disqualification of a judge under the appearance of fairness doctrine are inapplicable.

1.    Due Process Right to an Impartial Tribunal

Due Process "establishes the minimal requirements for a fair hearing." *State v. Blizzard*, 195 Wn. App. 717, 725, 381 P.3d 1241 (2016). Due process requires that a defendant receive a

24

fair trial before a fair judge. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 692, 101 P.3d 1 (2004). "Denial of the constitutional right to a fair tribunal is a structural error that requires reversal regardless of prejudice." *Blizzard*, 195 Wn. App. at 727.

Whether a trial court has violated due process typically focuses on judicial bias. *See Blizzard*, 195 Wn. App. at 727-28. The question is not whether a judge has an actual, subjective bias. *Id.* at 727. Instead, we apply an objective analysis. *Id.* We ask " 'whether as an objective matter, the average judge in his position is likely to be neutral or whether there is an unconstitutional potential for bias.' " *Blizzard*, 195 Wn. App. at 727 (quoting *Williams v. Pennsylvania*, ___ U.S. ___, 136 S. Ct. 1899, 1905, 195 L. Ed. 2d 132 (2016) (internal quotation marks omitted). "Recusal is required when, objectively speaking, 'the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable.' " *Rippo v. Baker*, ___ U.S. ___, 137 S. Ct. 905, 907, 197 L. Ed. 2d 167 (2017) (quoting *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S .Ct. 1456, 43 L. Ed. 2d 712 (1975)).

In *Blizzard*, the court noted:

> Through our country's significant history of litigation, only three circumstances have been found to create unconstitutional judicial bias: (1) when a judge has a financial interest in the outcome of a case, (2) when a judge previously participated in a case in an investigative or prosecutorial capacity, and (3) when an individual with a stake in a case had a significant and disproportionate role in placing a judge on the case through the campaign process.

*Blizzard*, 195 Wn. App. at 727-28 (citing *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877-84, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009)). A fourth possibility is when the judge has received highly offensive personal criticism. *Blizzard*, 195 Wn. App. at 728.

2.   Analysis

The appendix to Knox's PRP shows that the trial judge, Judge Evans, formerly represented the informant in March 2006 when he plead guilty to domestic violence third degree

assault. However, the record contains no information about the nature and extent of the representation or whether Judge Evans even remembered the informant. As a result, Knox has failed to show a potential for actual bias. In addition, this case does not fall into any of the categories of unconstitutional judicial bias recognized by the court in *Blizzard*. 195 Wn. App. at 227-28.

Knox also argues that the trial judge's role as a former lawyer for the informant must be viewed in conjunction with the role of the prosecutor's office. But this argument appears to present an appearance of fairness claim which Knox expressly disclaimed, not a constitutional claim. And, as discussed above, Knox's claims concerning the prosecuting attorneys and their office are without merit. Therefore, we conclude that the role of the prosecutor's office does not elevate these circumstances to a constitutional violation.

We hold that the trial judge's prior representation of the informant did not violate Knox's constitutional right to a fair trial.

F.     TRUE THREAT INSTRUCTION FOR SOLICITATION CHARGE

Knox argues that the trial court erred in failing to give a true threat instruction in conjunction with the solicitation change. He contends that RCW 9A.28.030(1) must be construed to limit its application to true threats in order to avoid facial invalidation of the statute on overbreadth grounds under the First Amendment to the United States Constitution and article I, section 5 of the Washington Constitution. The State argues that a true threat instruction was unnecessary because RCW 9A.28.030(1) requires the State to prove the defendant's intent to promote or facilitate a crime. We agree with the State.

1.    Legal Principles

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." *See State v. Homan*, 191 Wn. App. 759, 766, 364 P.3d 839 (2015). To avoid violating the First Amendment, a statute criminalizing threatening language must also be construed "as proscribing only unprotected true threats." *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013).

We employ an objective test (i.e., reasonable person standard) for what constitutes a "true threat" under the First Amendment. *State v. Trey M.*, 186 Wn.2d 884, 892-93, 383 P.3d 474 (2016). A "true threat" is a statement made in a context or under circumstances where a reasonable person would foresee that the statement would be interpreted as a serious expression of intent to inflict bodily harm upon or take the life of another person. *Id.* at 894.

Several types of crimes involving speech require a "true threat" jury instruction. *State v. Clark*, 175 Wn. App. 109, 114, 302 P.3d 553 (2013). However, a "true threat" jury instruction is unnecessary where the applicable statute requires the defendant to have some mens rea as to the result of the statement. *State v. Schaler*, 169 Wn.2d 274, 286, 236 P.3d 858 (2010); *Clark*, 175 Wn. App. at 114-15. The mens rea requirement essentially requires the State to prove that the threat was serious. *See Clark*, 175 Wn. App. at 115.

2.    Analysis

RCW 9A.28.030(1) states that the defendant's solicitation be made with "intent to promote or facilitate the commission of a crime." The trial court's jury instructions also defined the offense to include an intent requirement:

> A person commits the crime of criminal solicitation to commit murder in the first degree when, *with intent to promote or facilitate the commission of a crime of murder in the first degree*, he offers to give or gives money or other thing of value to another to engage in specific conduct which would constitute such crime or

would establish complicity of such other person in its commission or attempted commission had such crime been attempted or committed.

Ex. 1 at 69 (emphasis added). Because the State was required to prove Knox's intent to promote or facilitate a crime, under *Schaler* no "true threat" instruction was necessary.

Knox contends that the subjective intent required by the solicitation statute is distinguishable from and not an adequate substitute for the objective "true threat" requirement. But in the context of criminalizing speech, the reasonable speaker-based standard for determining a "true threat" requires that the defendant act with simple negligence. *Schaler*. 169 Wn.2d at 287. Because the criminal solicitation statute and the trial court's instructions here required that the State prove Knox's "intent to promote or facilitate the commission of a crime," the jury had to convict Knox based on something *more* than a true threat. *Id.* Therefore, RCW 9A.28.030's requisite intent supplies the mens rea for the result that *Schaler* requires. *Clark*, 175 Wn. App. at 115.

We hold that the trial court did not err in failing to give a "true threat" instruction in conjunction with the solicitation charge.

G.    FAILURE TO TIE UP CROSS-EXAMINATION QUESTIONS

Knox argues that the prosecutor's questions to him on cross-examination improperly suggested the existence of prejudicial facts but then failed to submit any evidence to establish those facts. We agree that the State improperly failed to tie up two suggestive questions, but we conclude that Knox cannot establish actual and substantial prejudice.

1.    Legal Principles

To prevail on a claim of prosecutorial misconduct, a defendant must show that "in the context of the record and all of the circumstances of the trial, the prosecutor's conduct was both improper and prejudicial." *In re Pers. Restraint of Glasmann*, 175 Wn. 2d 696, 704, 286 P.3d

673 (2012). We review the prosecutor's conduct and whether prejudice resulted "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.' " *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

" 'A person being tried on a criminal charge can be convicted only by evidence, not by innuendo.' " *State v. Miles*, 139 Wn. App. 879, 886, 162 P.3d 1169 (2007) (quoting *State v. Yoakum*, 37 Wn.2d 137, 144, 222 P.2d 181 (1950)). A prosecutor who asks questions that imply the existence of a prejudicial fact must be prepared to prove that fact. *See State v. Babich*, 68 Wn. App. 438, 444, 842 P.2d 1053 (1993). A prosecutor's impeachment of a witness by referring to extrinsic evidence that is never introduced may violate a defendant's right to confrontation. *Id.* at 445-46. A prosecutor may not use impeachment as a means of submitting evidence to the jury that is otherwise unavailable. *Id.* at 444.

2. Analysis

Here, the prosecutor inquired if Knox "paid [Crimmins] $8,000 to testify for [him]"; if Crimmins and Walker "took that $8,000 and bought a truck"; if Knox "and [his] attorney . . . had previously indicated that Cassandra Crimmins was going to be [his] witness in the case, that she was going to testify that the guns belonged to her"; and if Crimmins and Walker "didn't show up to testify." RP at 838-40. Knox either denied or responded equivocally to each inquiry.

Contrary to Knox's contentions, the State offered evidence to prove that Knox paid Crimmins, that Walker bought a truck with the money, and that Knox intended to call Crimmins as a witness. On direct examination, the informant testified that Knox gave Crimmins and Walker money to take responsibility for the charges against him. According to the informant,

Knox said that Crimmins bought a truck with the money. And on cross examination, Knox confirmed that Crimmins could have been a witness.

However, the State failed to offer evidence to prove that Knox paid Crimmins $8,000, that his attorney announced that Crimmins would be called as a witness for the drug and gun case, or that Crimmins failed to appear to testify. Because the prosecutor's cross-examination suggested personal knowledge or the existence of additional extrinsic evidence demonstrating these prejudicial facts, we conclude that his questions were improper.

But we also conclude that any misconduct did not cause actual and substantial prejudice. The questions that the prosecutor failed to tie up were a relatively minor part of the prosecutor's cross examination. The informant confirmed that a payment was made, just not the amount. Whether Knox's attorney announced that Crimmins would testify or whether Crimmins failed to appear are not particularly significant.

Knox does not identify how he was prejudiced by the improper questions. He argues that the error was not harmless under the constitutional harmless error standard. But the PRP standard is actual and substantial prejudice. *Dove*, 196 Wn. App. at 154. Knox has shown none.

We hold that the State improperly failed to tie up two suggestive cross-examination questions, but Knox cannot establish actual and substantial prejudice. Therefore, we reject Knox's argument.

H.      SUFFICIENCY OF EVIDENCE FOR POSSESSION WITH INTENT TO DELIVER

Knox argues that the State failed to present sufficient evidence to convict him of possession of methamphetamine with intent to deliver. He claims that the only evidence supporting his intent to deliver was the statement he allegedly made to an officer that he was a

30

drug dealer, but the trial court could not consider this statement under the corpus delicti rule because there was no corroborating evidence. We disagree.

1. Legal Principles

Knox focuses on the corpus delicti rule. "The corpus delicti rule prevents the State from establishing that a crime occurred solely based on the defendant's incriminating statement. The State must present corroborating evidence independent of the incriminating statement that the charged crime occurred. Without such corroborating evidence, the defendant's statement alone is insufficient to support a conviction." *State v. Hotchkiss*, 1 Wn. App. 2d 275, 278-79, 404 P.3d 629 (2017) (internal citations omitted).

However, the threshold question here is whether there is sufficient evidence even apart from Knox's statement that he was a drug dealer to support his conviction.

The general rule is that "[m]ere possession of a controlled substance, including quantities greater than needed for personal use, is not sufficient to support an inference of intent to deliver." *State v. O'Connor*, 155 Wn. App. 282, 290, 229 P.3d 880 (2010). But a finder of fact can infer intent to deliver from possession of a significant amount of a controlled substance plus at least one additional factor. *E.g., Hotchkiss*, 1 Wn. App. 2d at 281-82 (8.1 grams of methamphetamine and $2,150 sufficient); *O'Connor*, 155 Wn. App. at 290 (a large amount of marijuana, a sophisticated grow operation, and a scale sufficient); *State v. Brown*, 68 Wn. App. 480, 484, 843 P.2d 1098 (1993) (summarizing other Washington cases where intent to deliver was inferred from possession of quantity of narcotics involving at least one additional factor).

One of those additional factors is the defendant's possession of a large amount of cash. *O'Connor*, 155 Wn. App. at 290; *see also State v. Campos*, 100 Wn. App. 218, 223-24, 998 P.2d 893 (2000) (the defendant possessed a large amount of cocaine and $1,750 in cash).

"The same general rules for sufficiency of evidence to convict apply for corroborating evidence under the corpus delicti rule." *Hotchkiss*, 1 Wn. App. 2d at 281. Mere possession of a controlled substance cannot constitute sufficient corroborating evidence of a statement that the defendant had an intent to deliver. *Id.* However, the corpus delicti rule is satisfied if at least one additional factor showing intent is present. *Id.*

2. Analysis

Here, the State presented evidence that Knox had (1) 27.4 grams of methamphetamine and (2) drug paraphernalia indicative of sales or delivery – including two handguns, cellphones, plastic bags, and a digital scale – in his residence. In addition, officers discovered $2,405 in cash in a search of Knox's person.

The State also offered testimony from LPD detectives. They testified that drug dealers often have firearms for protection. Dealers also tend to use multiple cellphones, which allows them to have separate phone lines for personal use, buyers, and sellers. In addition, dealers package methamphetamine in bags or pieces of plastic that can be torn. And dealers often have small portable measuring scales used to weigh out different amounts of illegal narcotics.

Under the cases discussed above, this methamphetamine, cash, and other evidence discovered by officers is sufficient to support Knox's conviction for possession of methamphetamine with intent to deliver. *Hotchkiss*, 1 Wn. App. 2d at 282. In addition, Knox's possession of the methamphetamine combined with these additional factors is sufficient to provide corroborating evidence of Knox's incriminating statement under the corpus delicti rule. *Id.*

Therefore, we hold that the State provided sufficient evidence to prove that Knox possessed methamphetamine with intent to deliver.

I.    INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Knox argues that he was actually and substantially prejudiced by ineffective assistance of counsel due to his trial counsel's failure to (1) request a "true threat" instruction for the solicitation charge, (2) move for the disqualification of the Cowlitz County Prosecutors Office and the trial judge, (3) adequately investigate the informant's background, (4) discover evidence regarding  Crimmins' connection to Knox's residence, and (5) use due diligence in discovering evidence regarding Crimmins' statement before trial.  We disagree.

1.    Legal Principles

Ineffective assistance of counsel arises from the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution.  *State v. Estes*, 188 Wn.2d 450, 457, 395 P.3d 1045 (2017).  To prevail on an ineffective assistance claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the deficient representation prejudiced the defendant.  *Id*. at 457-58.  Representation is deficient if, after considering all the circumstances, it falls below an objective standard of reasonableness.  *Id*. at 458.  Prejudice exists if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed.  *Id*.

We apply a strong presumption that defense counsel's performance was reasonable.  *Id*. Counsel's conduct is not deficient if it was based on what can be characterized as legitimate trial strategy or tactics.  *Id*.  To rebut the strong presumption that counsel's performance was effective, "the defendant bears the burden of establishing the absence of any 'conceivable legitimate tactic explaining counsel's performance.' "  *State v. Grier*, 171 Wn.2d 17, 42, 246 P.3d 1260 (2011) (quoting *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004)).

The "reasonable probability" standard for prejudice in an ineffective assistance of counsel claim on direct appeal is not precisely the same as the "actual and substantial prejudice" standard in a PRP. *See In re Pers. Restraint of Crace*, 174 Wn.2d 835, 842, 280 P.3d 1102 (2012). However, a petitioner who presents a successful ineffective assistance of counsel claim necessarily establishes actual and substantial prejudice for purposes of collateral relief. *Id*. at 846-47.

2. Failure to Request a "True Threat" Instruction

As discussed above, we hold that a "true threat" instruction is not required in conjunction with the solicitation charge. Therefore, we hold that Knox did not receive ineffective assistance of appellate counsel on this ground.

3. Failure to Move for Disqualification of Prosecutors or Judge

Knox has not demonstrated, and in fact has not even argued, that the trial court would have granted motions to disqualify the entire prosecutor's office or the trial judge. In the absence of such evidence, Knox cannot show either that defense counsel's performance was deficient or that he was prejudiced. Therefore, we hold that Knox did not receive ineffective assistance of appellate counsel on this ground.

4. Failure to Investigate

Failure to investigate evidence, at least when coupled with other defects, can amount to ineffective assistance of counsel. *State v. A.N.J.*, 168 Wn.2d 91, 110, 225 P.3d 956 (2010); *see also In re Pers. Restraint of Brett*, 142 Wn.2d 868, 882, 16 P.3d 601 (2001). An attorney breaches his duty to his client if he fails " 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' " *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 721, 101 P.3d 1 (2004) (quoting *Strickland v. Washington*, 466 U.S. 668,

690-91, 104 S. Ct. 2062, 80 L. Ed. 2d 674 (1984)). "Defense counsel must, 'at a minimum, *conduct a reasonable investigation* enabling [counsel] to make informed decisions about how best to represent [the] client.' " *Davis*, 152 Wn.2d at 721 (alterations in original) (quoting *Brett*, 142 Wn.2d at 873). "This includes investigating all reasonable lines of defense, especially 'the defendant's most important defense.' " *Id*. (quoting *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001) ).

a. Failure to Investigate the Informant

In the discussion of *Brady* above, we concluded that the additional information about the informant that the State failed to disclose would not have affected the outcome of the trial. Under that same analysis, even assuming that defense counsel provided deficient performance in failing to discover that information, Knox cannot show prejudice under the ineffective assistance of counsel standard. Therefore, we hold that Knox did not receive ineffective assistance of appellate counsel on this ground.

b. Failure to Investigate Crimmins Evidence

Knox argues that Baer was ineffective in failing to conduct an adequate investigation of evidence connecting Crimmins to his residence. According to Knox, a reasonable investigation would have uncovered exculpatory evidence that would have provided a defense to the charged VUCSA offense. We disagree.

A police report attached in the appendix to Knox's PRP confirms that police told Knox about evidence connecting Crimmins to his property. In a declaration attached in the appendices of his PRP, Knox stated that he told Baer about this evidence:

> When I got out of jail in early 2014, I had contact with police officers regarding the burglaries and thefts from 909 California Way. I was told by an officer that the police had evidence Ms. Crimmins had stored her personal property there and had been intercepted trying to remove it. I recall telling Ms. Baer about this

35

report and I wanted her to get the documentation. She asked me who the officer was and I said I did not know. That was the end of the matter.

Ex. 37 at 778.

In her declaration attached in the appendices of Knox's PRP, Baer addressed the

evidence:

> Because Ms. Crimmins took responsibility for the drugs and guns found at the motor home at 909 California Way, I would have wanted to have other evidence to verify her connection to that address. The State did not disclose to me, as they should have, pursuant to Brady and Kyles, a police report (L14-543) which documented that Ms. Crimmins stored her personal property at 909 California Way in January 2014. Had I known of this report, I would have used this information to support Mr. Knox's defense at trial that the drugs and guns in the motor home were not his.

Ex. 30 at 749. Baer never stated that Knox told her about the evidence.

Assuming Knox told Baer about the evidence concerning Crimmins and Baer failed to

perform a meaningful investigation, the question here is whether this failure caused prejudice.

The evidence at issue was information that Crimmins had stored her personal property at Knox's

residence. However, this evidence did not directly involve whether Crimmins owned the drugs

and guns the officers found when they arrested Knox. At best, it allowed speculation that if

Crimmins kept her personal belongings at Knox's motor home, the drugs and guns officers

seized were part of those belongings. We conclude that Knox cannot show that the result of the

trial would have been different if this evidence had been presented to the jury.

      c.    Failure to Locate Crimmins

Knox also argues that Baer was ineffective in failing to use due diligence to locate

Crimmins so she could testify at trial. In her declaration, Baer states that she received a signed

declaration from Crimmins on the last day of trial in which she took responsibility for the drugs

and guns found at Knox's residence at 909 California Way. After trial, Baer located and visited

Crimmins in jail, and Crimmins confirmed that the declaration was correct.

In denying Knox's motion for a new trial based on Crimmins' declaration, the trial court

suggested that Baer through due diligence could have located Crimmins in time for her to testify.

But Baer documented her many unsuccessful efforts to locate Crimmins. What she did not do

was to hire a private investigator or request a material witness warrant.

However, what the record leaves unanswered is whether Baer had a strategic reason for

not wanting Crimmins to testify. Although Baer knew that Crimmins had made a statement

claiming ownership of the drugs and firearms seized at Knox's motor home, Baer did not put her

on the pretrial witness list. And although Baer received a copy of the signed statement before the

end of trial, she did not seek a continuance to locate Crimmins so she could testify. In her

declaration, Baer did not address why she took those actions or whether or not she actually

wanted Crimmins to testify.[5]

Baer's strategy at trial was to blame Sullivan for Knox's VUCSA charge. In closing

argument, Baer argued that Knox did not live at the motor home. Instead, Knox was letting

Sullivan stay there and the seized drugs, firearms, and scales belonged to Sullivan. It is possible

that Baer made a strategic and informed decision against calling Crimmins as a witness to

support an alternative theory.

On this record, it is impossible for the court to tell whether Crimmins would have been

called to testify even if Baer had located her. In the absence of evidence regarding defense

---

[5] It is possible that Baer was concerned about an officer's statement that Crimmins told him that Knox had paid her $20,000 to make the statement. If Crimmins testified, that evidence would be presented to the jury as impeachment.

counsel's strategic or tactical decision making, it is difficult for us to find ineffective assistance of counsel. *See State v. Linville*, 191 Wn.2d 513, 525, 423 P.3d 842 (2018).

We hold that on this record, Knox cannot meet his burden of establishing ineffective assistance of counsel based on Baer's failure to locate Crimmins.

J.      CUMULATIVE ERROR

Knox argues that cumulative error denied him a fair trial. Under the cumulative error doctrine, the defendant must show that the combined effect of multiple errors requires a new trial. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017).

Here, Knox has not demonstrated that regardless of any errors, he was denied a fair trial. Therefore, we hold that the cumulative error doctrine is inapplicable.

K.      INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

Knox argues that he received ineffective assistance of counsel due to his appellate counsel's failure to challenge (1) the trial court's failure to give a "true threat" instruction, (2) the trial court's denial of the motion for a new trial based on evidence about Crimmins discovered after trial, (3) the prosecutor's failure to tie up his impeachment questions to Knox, and (4) the sufficiency of the State's evidence supporting his VUCSA conviction.

As discussed above, we hold that claims (1) and (4) raised in his PRP have no merit. And (3) involved error but no prejudice. Therefore, we only address whether appellate counsel provided ineffective assistance in failing to challenge the trial court's denial of the motion for a new trial. To that end, the question here is whether the trial court erred in denying Knox's CrR 7.5(a)(3) motion for new trial based on newly discovered evidence. We conclude that it did not.

1.      Legal Principles – Motion for New Trial

CrR 7.5(a)(3) states that a trial court may grant a motion for a new trial based on newly discovered evidence that "the defendant could not have discovered with reasonable diligence and produced at trial."  A new trial may be granted under this rule if the proponent can establish that the new evidence "(1) will probably change the result of the trial; (2) was discovered since the trial; (3) could not have been discovered before trial by the exercise of due diligence; (4) is material; and (5) is not merely cumulative or impeaching."  *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981) (emphasis omitted).  The absence of any one of these factors is grounds to deny a new trial.  *Id.*; *State v. Larson*, 160 Wn. App. 577, 586, 249 P.3d 669 (2011).

We review for an abuse of discretion a trial court's denial of a motion for a new trial. *State v. Pete*, 152 Wn.2d 546, 552, 98 P.3d 803 (2004).  A trial court abuses its discretion by reaching a conclusion no reasonable judge would reach.  *Id.*  We will reverse a trial court's denial of a new trial motion only where the moving party clearly shows that the trial court abused its discretion.  *See id.*

2.      No Abuse of Discretion

For an ineffective assistance of appellate counsel claim, a defendant generally must establish that the appellate court would have reversed if counsel had raised the issue on appeal. *See In re Pers. Restraint of Meredith*, 191 Wn.2d 300, 308, 422 P.3d 458 (2018).  The question here is whether this court on direct appeal would have reversed the trial court's denial of a new trial based on newly discovered evidence.

The trial court denied Knox's motion after concluding that both the second and third *Williams* factors were lacking.  Regarding the second factor, the court found that Baer knew when she received the file that Crimmins had made a statement claiming ownership of the drugs

and firearms seized from Knox's motor home. Knox does not challenge this finding. And the finding supports the court's conclusion that the statement was not first discovered after trial.

Regarding the third factor, the trial court found that Baer had never listed Crimmins as a witness, sought a continuance to locate her, hired a private investigator to locate her, or sought a material witness warrant. Knox does not challenge this finding. And the finding supports the court's conclusion that Knox could not show that the evidence could not have been discovered before trial by the exercise of due diligence.

We conclude that the trial court did not err in denying Knox's motion for a new trial based on newly discovered evidence. Therefore, we hold that Knox cannot show ineffective assistance of appellate counsel.

### CONCLUSION

We deny Knox's PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

SUTTON, A.C.J.

GLASGOW, J.